PETER MOORE *vs.* JOSHUA ROBBINS.

WINDHAM,
*February,*
1835.

If sheep are taken, damage feasant, it is sufficient, if notice is given to the owner in twenty-four hours after they are delivered to the pound keeper.

Such notice need not be to appoint appraisers, if damages are not claimed by the impounder.

When personal notice is given, it may be given by an agent of the impounder if the owner actually has the notice, and receives it as coming from the impounder.

This was an action of trover for nine sheep, appealed from the judgment of a justice.

The taking was admitted by the defendant. The defendant then adduced testimony tending to prove that the sheep in question were taken by the defendant's hired man, on the last day of April, 1834, about noon of the day, from the defendant's mowing lot, and shut up in defendant's barn; the defendant being out at work on his farm, half a mile from home. He returned about two o'clock afternoon, and was informed plaintiff's sheep were in the barn. The next morning about seven o'clock the defendant started with the sheep to drive them to pound, and delivered them to the pound keeper about eleven o'clock in the forenoon, who put them into the pound in Newfane, in which town both the parties reside; that the distance from the defendant's house to the pound keeper is about seven miles. The reasonableness of the time, however, was submitted to the jury. That on the defendant's return home, he sent his man a little before sun-down of the same day to tell the plaintiff that his, the plaintiff's, sheep were driven to pound; that the man found the plaintiff absent from home, and therefore told the plaintiff's wife and hired man that the plaintiff's sheep had been driven to pound; that on the second day of May 1834, the plaintiff applied to the pound keeper and requested him to deliver to the plaintiff his sheep, but he refused, and asked the plaintiff if he had not received notice that his sheep were in pound? Plaintiff replied that word had been left with his hired man the night previous, that his sheep had been driven to pound by defendant.

The plaintiff contended, and so requested the court to charge the jury, that notice in writing should have been left at the dwelling house of the plaintiff, or personal notice given him of the impounding, and also to notify the plaintiff to appear at the dwelling house of the defendant within twenty-four hours, and appoint a committee to appraise the damages done by said sheep.

WINDHAM,
February,
1835.
Moore
vs.
Robbins.

The plaintiff also contended, and requested the court so to charge the jury, that the defendant was not authorized by law to keep the plaintiff's sheep in the defendant's barn or other place, but should have driven them immediately to the pound, on their being found damage feasant,

The plaintiff also contended that if the impounding aforesaid should be adjudged illegal, the plaintiff would be entitled to recover in this action the value of the said sheep.

But the court instructed the jury, that upon the foregoing facts, the plaintiff was not entitled to recover in this action.—Verdict for defendant.

The plaintiff took his exceptions which were allowed and certified,

*Mr. Kellogg and Mr. Roberts, for plaintiff,*—The instruction of the court to the jury in this case proceeds upon the supposition—either,

1. That in a distress for damages feasant, replevin is the only remedy—or,

2. That the facts in the case do not show a conversion.

1. It is insisted that the remedy by replevin given by the statute is in aid of the common law—is merely cumulative, and that the common law remedy by action of trespass or trover remains at the election of the party.—8 Coke Rep. 146.—1 Saunders on pleading and evidence, 535.—1 Cowper's Rep. 417—418 *Lindon vs. Hooper.*

2. If the taking cannot be justified by reason of subsequent irregularities, the defendant being thereby a trespasser *ab initio*, the first taking was unlawful; and the taking being unlawful is in itself a conversion.—2 Phillips' Evidence, 118.

3. At common law *any* irregularity committed in the proceedings of a distress, rendered the party a trespasser *ab initio*, and it is still so in distresses for damages feasant.—1 Saunders pleading and evidence, 533.

4. It is contended that irregularities occurred in the proceedings of this distress by reason of which the defendant became a trespasser *ab initio.*

1. The defendant having taken the sheep, damage feasant was found, if he would justify by impounding, to drive them immediately to the public pound, there being one in town.—Statute 450 —Hammond's Nisi Prius, 385.

This then, is an irregularity in the proceedings—

2. The defendant having impounded the *distress*, taken damage

feasant, was bound " foithwith, or within twenty-four hours, to no- WINDHAM, *February* 1835.
tify the plaintiff by leaving word at his dwelling house *in writing*
or by giving him *personal notice* thereof," &c.—Statute 451. Moore *vs* Robbins.

But he did not leave word in writing, nor did he give the plain-
tiff *personal notice.*

This then, was an irregularity in the proceedings—

3. If the impounding was for damages done by the sheep, and
the defendant claimed damages, he was bound to have the dam-
ages ascertained in the manner and within the time limited in the
statute, and the omission so to do is an irregularity.—13 Johnson,
*Merritt* vs. *O'Neil,* 477.—10 Johnson, 254, 255, 257.—10
Johnson, *Hopkins* vs. *Hopkins,* 369.

In the cases last cited the failure to have the damages ascertain-
ed, was adjudged such an irregularity as rendered the party a *tress-
passer ab initio.*

5. But it may be said that as the *first taking* was not by the
defendant, the subsequent irregularities in the proceedings cannot
make him a trespasser by relation.

We answer, that inasmuch as the defendant *assented* to and rat-
ified the taking, by impounding the distress, he thereby became
implicated in the taking, and by reason of his subsequent irregular-
ities, a *tresspasser ab initio.*

So are the authorities.—11 Johnson, *Van Brunt* vs. *Shenck,*
377, 382.

This assent is equivalent to a previous command.—Hammond's
Nisi Prius, 387.

Again—If the plaintiff had brought replevin, he could avail him-
self of any conduct of the defendant by which he made himself a
trespasser from the beginning, precisely as he could, had tresspass
been bought.—10 Johnson, *Hopkins* vs. *Hopkins,* 372.

*Mr. Bradley for defendant.*—Exceptions on the ground,
1. That defendant ought to have driven the distress to the com-
mon pound immediately after taking.—2. That notice was not giv-
en according to the statute, either in writing or personally.

As to the first point there is no law statute or common, which
requires that the distress should be driven immediately to the com-
mon pound.

It may be kept by the distrainer a reasonable time in his custo-
dy, and this is not an impounding, if it appears to have been dis
trained with the intention of taking to the common pound, but a
mere keeping for that purpose. And it is sufficient that it be driv-
en within a reasonable time, which is here found by the jury to

have been done.—*Brown vs. Powell*, 4 Bing. 230.—[13 C. L. R. 411.]

As to the second point, notice was not necessary by the common law—3 Bl. Com. 12, and although in *Mooney vs. Maynard*, 1 Vt. Rep. 470, the court decided that the statute, where inconsistent with the common law, supersededed it; yet, where no inconsistency exists the common law is in force,—*Ib.* 476. Now the four first sections of the statute, under which this impounding took place, are all in direct affirmance of the common law; and when the impounding took place the property was out of the reach of the party and in custody of the law.—3 Bl. Com. 12. If the owner or the public wished to have or inforce notice afterwards, the remedy was by going for the penalty not in trespass or trover, which does not lie except some act is done or required to be done, which being irregularly done, constitutes in itself an abuse or conversion of the property in part or in whole, as if he procure appraisement, and thereby charge the property with a lien for damages or sell illegally, as was done in *Sutton & Beach*, 2 Vt. Rep. 42. But a negative abuse, much less a nonfeasance, will not of itself make one a trespasser.—5 Ld. Ray. 188.—6 Carpenter's Cases, Co. Rep. 146.—6 Bac. Abr. 560, Wilson's Ed.] But notice was given so that the plaintiff received it, and it was not necessary that the defendant should call himself upon the plaintiff. He might send verbal notice, and if it passed through several hands, and yet the plaintiff acknowledged it, the law would be satisfied. Written notice left at the dwelling house is used to dispense with proving actual notice. Here his appearance at the pound to claim the sheep, with the knowledge that the defendant had stated that he had impounded them, was sufficient for the jury to presume personal notice.

So too, when the plaintiff appeared on the 2d of May and acted under that notice left with his family the evening before, he adopted it, and being asked by the pound keeper whether he had such notice, and admitting it without any objection on the score of time, it fairly followed that it was within the 24 hours, especially as it did not appear but that he was at the pound within that time. If then, the impounding was lawful the action of trover does not lie on the ground of the pound keeper's refusal to deliver. He is the officer of the law, not of the party, nor acting under the party's direction, nor do his fees appear to have been tendered, and if they had see 8 Coke *ut supra*.

WINDHAM,
*February,*
1835.

Moore
*vs.*
Robbins.

The opinion of the court was delivered by

WINDHAM,
February,
1835.
Moore
vs.
Robbins,

WILLIAMS, Ch. J.—The queston in this case is, whether the taking the sheep in question was unlawful, or whether defendant has made himself a trespasser *ab initio*, by his neglecting to comply with the requisition of the law in this behalf. In either case, trespass or trover may be maintained. The plaintiff relies upon two principles to maintain this action, as contained in his request to the court to charge the jury, to wit: That proper notice was not given to him of the impounding the sheep, and that the defendant was not justified in keeping them in his barn, but should have immediately driven them to pound. It is made the duty of any person impounding any creature taken damage feasant, forthwith, or within twenty-four hours, to notify the owner by leaving *word* at his house in writing, or giving him personal notice thereof. If damages are claimed, the notice must also be to appear at the dwelling house of the impounder within twenty-four hours to appoint persons to appraise the damages. The time from which the twenty-four hours is to be computed, must be from the time of impounding, and not from the time of taking, as was argued. The person impounding is to give the notice, and he cannot be called the impounder or person impounding, until he has actually delivered the creatures impounded to the custody of the pound keeper. If they are taken from the possession of the person driving them to pound against his will, the person taking is liable to a penalty for a rescue, if from the pound keeper, the taking constitutes what is termed pound breach. The provision in relation to appointing appraisers is only to ascertain the damages. If the person impounding waives any claim for damages, as he may, it is not necessary to have any appraisess appointed.

The plaintiff was, therefore, incorrect in claiming of the court to charge the jury that it was the duty of the defendant to notify the plaintiff to appear and agree upon, or appoint a committee to appraise the damages. The other part of the request of the plaintiff is almost in the words of the statute, and he was undoubtedly entitled to the benefit of the principle of law arising from the statute. If he has been deprived of it by the neglect of the county court, the judgment must be reversed. I consider that a neglect on the part of an impounder to proceed with a distress according to the requisitions of the statute will make the destrainer a trespasser *ab initio*. It was so in England until the statute of 11 Geo. 2 c. 19, s. 19, made this case an exception from the general rule of law upon this subject. This neglect is not a nonfeasance merely,

WINDHAM,
February,
1885.

Moore
vs.
Robbins.

like the six carpenters case, it is more analagous to the case of a sheriff neglecting to return a writ. It is, however, unnecessary to examine this principle very fully, as the important question will still remain, whether in the present case there has been a failure to comply with the requisition of the statute.

The second request of the plaintiff to the court to charge the jury, is founded on the supposition that a person taking cattle damage feasant, must proceed immediately with them to the pound. This, however, is not indispensably necessary. There must be no unnecessary delay,—the impounder should proceed with all convenient despatch, and this will always depend on the circumstances of each particular case,—the distance from the pound—the time of day when taken, &c., to be judged of by the jury or court who try the case. In the application of these principles to the case under consideration, it becomes necessary to inquire whether the notice was given as required by the statute. By personal notice we do not consider that notice shall be given directly by the persons impounding to the owner. He may give this notice by an agent, but must, in such a case, incur the risk of being able to prove it when required. By leaving "*word* in writing," as the statute expresses it, he is protected, whether the word comes to the knowledge of the owner or not. By taking any other course, he must not only be sure that the notice is given and received, but also that he can prove it by satisfactory evidence when the fact is put in issue. If the notice is to appoint appraisers, it should be specified. If only the fact of impounding, word may be sent by another, but it must be made to appear that the owner had the word within the limited time, and had it as notice coming from the impounder. In this view it is immaterial through how many hands the notice may have passed, provided it comes to the owner, and he receives it as coming from the impouder. In this case it appears that such notice was given. The agent of the defendant left word with the family of the plaintiff, and the plaintiff received the notice as from him, that his sheep were impounded. This was such a personal notice as was a compliance with the requisitions of the statute. In relation to the reasonableness of the time after the sheep were taken before they were driven to pound, it appears that it was left to the jury, and their decision on that question is conclusive. Furthermore, it appears there was no unnecessary delay. From the manner in which the case is stated, there is some doubt whether any question was left to the jury. This is, undoubtedly, an inaccuracy, as there is apparently some inconsistency in the case as stated. It is

WINDHAM,
February,
1835.
Moore
vs.
Robbins.

said the court instructed the jury that the plaintiff was not entitled to recover. But it appears in another part of the case, that the reasonableness of the time during which the sheep were kept by defendant after taking and before impounding, was submitted to the jury; and so also undoubtedly was the fact, whether the plaintiff received the notice left at his house by the defendant's agent. It is not, however, stated as fully and as accurately as it might have been, what questions were submitted to the jury. We think, however, it would not be expedient to send this case to another jury for them to pass upon this question of notice, when from the same facts which are detailed in this case, they should and would find that the notice was given.—On the whole, we see no reason to set aside the verdict, and the judgment thereon must be affirmed.