HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.
HON. BENJAMIN H. STEELE,

---

ADMINISTRATOR OF CYRUS WHITCOMB *v.* OREL COOK.*

*Survivorship of Actions. Statute. Justices of the Peace. Arrest.*

An action to recover damages for an unlawful arrest and imprisonment survives the death of the party injured, it being regarded as an action to recover damages for a bodily hurt or injury.

The plain intent of the statute, (§ 11, ch. 52, G. S.,) was to make all actions survive where the cause of action was for a physical injury to the person, caused in any unlawful manner.

The plaintiff's intestate was arrested for debt and gave notice to the officer that he wished to go at once to Montpelier, which was beyond the limits of the county,

---

* This case was decided at the January Term, 1865.

and appear before the magistrate who signed the writ, and procure the discharge of his body. The magistrate at that time was temporarily absent at Montpelier. *Held*, that it was not the duty of the officer to comply with the request, as the magistrate had no jurisdiction over the proceedings out of his county.

As a general rule justices of the peace can perform judicial acts only in the county for which they are appointed.

Where at the time a debtor is arrested upon a writ, procured against his body by affidavit, the magistrate signing the writ is temporarily absent from the county, and the debtor notifies the officer that he wishes to be taken before the magistrate for an examination, the officer has no legal right to commit him forthwith to jail so that he can have no opportunity to go before the justice and have an examination; it is the duty of the officer to detain the debtor in custody for a reasonable time, at least, to afford opportunity for such examination, and if he did not, but committed him, the imprisonment would be unlawful. But during the period of such delay, the officer may place the debtor in a secure place for safe keeping, and may use the common jail for that purpose.

THIS was an action for false imprisonment with counts for assault and battery. Plea, the general issue and notice. Trial by jury, September Term, 1863, KELLOGG, J., presiding. The plaintiff gave evidence showing an arrest of Cyrus Whitcomb upon a writ in favor of the defendant on the 1st of November, 1860, and the commitment of said Whitcomb to jail for want of bail. It was conceded there was no other assault and battery than the mere arrest upon said writ, and taking to the jail without any force or violence; and the claim made was for damages for his detention in jail and his expenses there and in procuring his bail and release under a jail bond from his imprisonment.

The evidence on the part of the plaintiff also showed that the writ on which the arrest was made was signed in blank by M. G. Everts, justice of Rutland county, and that on the day on which said arrest was made, Everts was at Montpelier, in Washington county, Vermont, and that he did not return until the next day or second day after to Rutland county, and also tended to show that, soon after the arrest and before commitment, Whitcomb notified the officer making the arrest and said Cook, the plaintiff on said writ, of his wish to go to Montpelier at once to appear before the magistrate who signed the writ, and procure the discharge of his body. But the officer committed Whitcomb to jail,—the defendant and said Cyrus and the officer being all present at the interview. There was some evidence tending to show that after the plaintiff was told that Everts was at

Montpelier, he insisted on going to Montpelier, that thereupon there was some discussion about the propriety of taking him out of the county, and the result was Dr. Cook, (the defendant,) proposed to the plaintiff that if he would secure the debt he would give him time, otherwise the officer must commit him; that the officer made him the same offer, and he not complying, the officer committed him,—the plaintiff and defendant being both present at the interview, and Cook advised or consented to the commitment of Whitcomb instead of taking him to Montpelier before the justice there, who signed said writ.

The defendant, Cook, gave evidence showing that at the time he took his writ of attachment against Whitcomb, he made, executed and filed in the office of said justice Everts his affidavit in due form and substance as prescribed by statute, to procure a *capias* against an absconding debtor in an action of assumpsit. And other facts were put in, not material to be stated.

The defendant insisted that this action, under the showing of the plaintiff, did not survive, and could not be prosecuted by, or a judgment recovered in the name of, an administrator, but the court ruled otherwise. The court also held and charged the jury that it was the duty of the officer, on notice and request of Whitcomb, at the time of his arrest, to go before said magistrate at Montpelier,—to carry him, Whitcomb, before the authority who issued said writ, even though he was out of his county and at Montpelier; and that if they found that at the time of said arrest Whitcomb insisted upon being taken to Montpelier where said justice was, that he might there have a hearing upon his application to be discharged from arrest; and if Cook, so understanding, did either advise or direct the officer not to take Whitcomb to Montpelier for said purpose, and the officer did not take Whitcomb before the justice there, but did thereupon commit him to jail, then this action would lie against the defendant, and the administrator could recover damages in this action for such commitment to jail,—to which the defendant excepted.

Verdict for the plaintiff.

*W. H. Smith,* for the defendant.

I. Does the action survive to the administrator under act of 1847, G. S. 391, § 11? The whole *gist of the action and claim* made is for

Adm'r of Whitcomb *v.* Cook.

consequential damages. Plainly here is not a case of "*bodily hurt or injury,*" intended to be provided for by the statute in question. "*Bodily hurt or injury*" imports *violence, force,* a *wounding* of the *person.*

II. Justices of the peace and *county* officers have no authority to act as such out of their counties. Such is the uniform understanding, and all practice has conformed to it, till it has become the common law of the state. They are so treated in the statutes, G. S. p. 54, § 5 ; p. 286, §§ 71, 74, 76. In this case the officer might well have kept his prisoner, even in jail, till the magistrate returned, and then the debtor might have had his hearing under the old or a new notice. *In re Foot,* 31 Vt. 505–8.

*Dewey & Joyce,* for the plaintiff.

I. This is an action " for the recovery of damages for *a bodily hurt or injury,*" within the meaning of the 11th section of chapter 52 of the General Statutes, and may be prosecuted by the administrator of Whitcomb. 1 Ch. Pl., p. 60.

II. The statute requires the affidavit to be " filed with the authority issuing the writ." Although it is held in *Phillips* v. *Wood,* 31 Vt. 352, that all which is requisite is that the affidavit be lodged in the office of the magistrate, we insist this is *not* sufficient where it affirmatively appears that at the time of so lodging the affidavit and issuing the *capias,* the magistrate was absent from the county. It should be shown, presumptively, at least, that it came to his hands or to his immediate control. *Parkhurst* v. *Pearsons et al.,* 30 Vt. 705. See also *Ingraham* v. *Leland et al.,* 19 Vt. 304.

III. It was the debtor's right to appear *forthwith* before the magistrate and submit himself to examination ; and it was the duty of the officer making the arrest, to convey him, on request, before the authority signing the process. G. S., ch. 33, §§ 78, 80. 1. If the affidavit may be filed with the justice, and he may issue thereupon a *capias,* and take recognizance for costs, while he is beyond the limits of his own county, surely he may take cognizance of the application to be released from arrest upon such *capias.* 2. But if it be held that the officer had the right to delay until the return of the magistrate, still we insist that the officer had no legal right to imprison the debtor in the meantime.

The opinion of the court was delivered by

POLAND, Ch. J. The first question presented by the defendant's exceptions in this case is whether the action survived the death of the intestate, so as to be a legal ground of recovery by his admin-istrator.

By the common law the death of either party to an action for the recovery of damages for a tort to the person, put an end to the action, and the same could not be prosecuted by or against the legal repre-sentative of the deceased party.

The general doctrine of the common law that *torts die with the person*, has been largely interfered with by modern legislation, in conse-quence of its harsh and unjust operation in many cases, so that now in this state hardly any cause of action for damage to either person or property, is allowed to be defeated by the death of either the party injured or the party liable.

Among other statutes upon this general subject, we have one pro-viding that in actions to recover damages for any *bodily hurt or in-jury*, the death of either party shall not defeat the action, but the same may be prosecuted by or against the representative of such de-ceased party. This action was brought by the intestate to recover damages for an alleged unlawful arrest, and imprisonment of his body in jail, by the defendant. Is this an action to recover damages for a bodily hurt or injury? The defendant claims it is not, and that the words bodily hurt or injury import some use of actual force or violence upon the body, and some injury that causes pain or sickness of the body. It is clear, we think, that the statute did not intend to confine the survivorship to hurts or injuries that were caused by di-rect force, for which trespass would be the appropriate remedy, for the statute makes the action survive, when such bodily hurt or injury is caused by the unlawful *act* or *neglect* of the defendant, so that clearly there may be cases where the hurt or injury is consequential, and results from the negligence of the defendant, which would sur-vive. But if this were otherwise, and the defendant's act must be forcible and direct so that trespass would lie, this case is clearly of that character. For unlawful arrests and imprisonments, it has al-ways been held that trespass was the proper and the only remedy, though no actual force or violence be used in making the arrest and

imprisoning the plaintiff.  If the party making the arrest has, or claims to have, what purports to be a lawful process, upon which he makes the arrest, the party arrested is not bound to incur the risk of resisting the execution of legal process, and though he submits quietly and peaceably to the arrest for that reason, still in legal contemplation the arrest is an act of force, and trespass the appropriate remedy, if in fact the arrest was without lawful authority.

But do the words of the statute require that the hurt or injury should be an actual wounding of the body, or the application or use of force upon it which shall cause pain or suffering?  If the word *hurt* had alone been used there would seem to be more reason in the defendant's claim, but the legislature have added the word injury, and as we think with the purpose of using a word of more enlarged and extensive signification ;  else they would not have used it at all.  The word *bodily* is to be understood as qualifying both, as if the statute read bodily hurt or bodily injury.  Is the unlawful arrest of a man's body and confining his body in a jail, and restraining him of his liberty an injury to his body?  The law regards it as giving a legal ground for an action.  But it is not an injury to the man's property, or his character, or reputation ;  at least an action is not given on any such ground.  Upon what ground can it be placed then, except that it is an injury to his body?  It may cause distress of mind, it may disgrace him, he may suffer pecuniary loss by it, but so he may also from a beating, and though all these may be elements of aggravation, and grounds for increased damages, still the real ground and foundation of the action is for the injury to his person.  We think the clear and plain intent of the statute was to make all actions survive when the cause of action was for a physical injury to the person caused in any unlawful manner.  The word *bodily* was used so as to carefully exclude certain actions which are sometimes by law writers included in the class of actions for personal injuries, such as actions of slander, and for malicious suits or prosecutions.

The defendant claims that the language of this act should be strictly construed, as an act in derogation of the common law.  That principle is entirely sound and is recognized by the courts in all cases to which it properly applies, when some common law right is taken away.  But it is also a settled rule in the construction of statutes,

that remedial statutes are to be liberally construed, which in our judgment is the proper rule to be applied to this statute. It is made to preserve an already accrued and existing right, from being lost by this harsh and technical rule of the common law. One may have suffered great loss and wrong by the unlawful and wicked act of another. If the wrong doer dies, is it not just and right that the injured party should be recompensed out of the estate of the perpetrator? or if the injured party dies, ought not the successors to his rights and property, to be entitled to the recompense rather than that the wrong doer should escape all the consequences of his act?

But without resorting to any other rule than the plain and obvious meaning of the language of the statute, we are satisfied it covers the case of an unlawful arrest and imprisonment of the plaintiff's body, and in our view it would be monstrous to hold that an action for a slight blow or kick survived, and a claim for being unlawfully incarcerated in a prison, however long, did not, but died with the person of the plaintiff.

The plaintiff now attempts to make a question against the validity of the process upon which the arrest and imprisonment were made, on the ground that no affidavit was properly filed with the magistrate by whom the writ was signed. It is a sufficient answer to this objection, that no such question appears to have been made at the trial. No objection was then made to the legality of the arrest on this ground, nor was any decision of the court below called for, or made in reference to it. If such a question had been made, it might perhaps have been wholly obviated by some further showing, and to entertain such a question here, when the case was tried and made up on other questions entirely, might do manifest injustice.

The only remaining question grows out of the alleged illegality of the arrest and imprisonment of the plaintiff's intestate in disregard of his request to be taken before the justice signing the writ, to have a hearing on the question of whether he was about to leave the state, or had property secreted, &c. The statute provides that on the arrest of a defendant upon a writ, procured by the filing of such an affidavit, he may notify the officer making the arrest, that he will appear before the authority signing such writ for an examination and

Adm'r of Whitcomb *v.* Cook.

hearing, and it is made the duty of the officer in such case, if the debtor requests it, to convey the debtor to the place of such examination, and in such case the statute says, " such officer shall have no right to commit such debtor or defendant to jail till such examination has been had." In this case it appears that on the day when the arrest was made, Mr. Everts, the justice who signed the writ, was absent at Montpelier, some hundred miles or more from Rutland where the arrest was made, and did not return till the next day or second day after. It does not appear that any one knew when he was expected to return, but the fair presumption is, that it was understood that his absence was only temporary, and that he was not to be long absent.

The plaintiff's intestate notified the officer that he wished to go at once to Montpelier and appear before the magistrate and procure the discharge of his body. Was it the duty of the officer to comply with this request, and take the party to Montpelier? This depends upon whether Montpelier was the proper and legal place for such examination.

Mr. Everts was a justice of the peace for the county of Rutland. Montpelier was in another county. The duty of a magistrate in such case is clearly one of a judicial character, requiring the administration of oaths to witnesses, the hearing of testimony, and adjudgment and determination thereon. If Mr. Everts as a justice for Rutland county could not properly and legally perform those duties there, then that was not a proper and legal place for the hearing, and the officer was not bound to comply with the defendant's request to go there.

Neither the constitution, nor any statute of this state, expressly defines the territorial extent within which justices of the peace may exercise such judicial powers as are devolved upon them, but by the universal and unquestioned opinion, both official and unofficial, it has always been understood to be limited to the counties in which they reside, and for which they are elected. Some provisions of the constitution imply this, and it is also clearly implied by many references in the statute. For example, when a justice removes out of the county for which he was appointed, he is to deliver all his files and records to the county clerk, and thereafter all copies of his rec-

ords are to be certified by the county clerk, and the clerk is to issue all executions on any of his judgments which are unsatisfied. But without pursuing this subject farther it is sufficient to say, that the general rule is undoubted, that a justice of the peace can only perform judicial acts in the county for which he is appointed, and we find nothing in the statutes in reference to the proceedings and examinations of this character that affords the slightest warrant for holding that his sphere of jurisdiction is enlarged for this purpose.

We think therefore the officer was not bound to take the debtor to Montpelier for examination, because that could not legally be the place of examination.

The court below held that it was the duty of the officer to do so, and so instructed the jury, which we think was erroneous.

But the plaintiff claims that if the debtor had no right to have his request to be taken to Montpelier granted, that his request in substance, amounted to a request to be taken before the authority signing the writ at the proper time and place, wherever, and whenever that might be, and that the officer ought to have kept the debtor in custody until he could comply with it, and that his committing the debtor immediately to jail on the writ, was in contravention of the statute and unlawful, and being directed by the defendant, the defendant is liable therefor.

Where at the time a debtor is arrested upon a writ, procured against his body by affidavit, the magistrate signing the writ is temporarily absent from the county, and the debtor notifies the officer that he wishes to be taken before the magistrate for an examination, we think the officer ought not, and has no legal right, to commit him forthwith to jail so that he can have no opportunity to go before the justice and have an examination ; that it is the duty of the officer to detain the debtor in custody for a reasonable time at least, to afford opportunity for such examination, and that if he did not, but committed him, that the imprisonment would be unlawful. The officer in such case would not be bound to make himself the personal keeper of the debtor during the period of such delay, as it might be exceedingly inconvenient or impossible for him to do so, and he might without doubt place the debtor in any safe and secure place for safe keeping, that was reasonable and proper, and that he might use the

common jail for that purpose, and that it should be regarded as a suitable place, can hardly admit of doubt, as one purpose of such structures is as a place of confinement of debtors under legal restraint. But we do not feel warranted in saying from what appears on the exceptions, that the debtor's request should be. treated as a general request to the officer to take him before the signing authority, at such time and place as was legal and proper, or on the return of the magistrate. Whether it ought under all the circumstances, and from all that was said, to have been so understood, is more a question of fact, than of law, and especially whether any direction which the defendant gave the officer, was in effect and substance to commit the debtor in violation of his legal rights.

In form, as the exceptions state it, the sole and only request of the debtor, was to be taken to Montpelier, and the direction the defendant gave was based upon the choice between taking him there, and committing him to jail. If the debtor did not wish, or ask for any opportunity for an examination unless he could be immediately taken to Montpelier, and the officer and defendant had fairly the right to understand that he requested nothing else, they had the right to disregard that request, and he was properly committed. Another trial may more fully develop the facts.

Judgment reversed and case remanded.