BURTON J. GIBSON v. A. G. HOLMES AND P. H. PHARNEUF.

May Term, 1905.

Present: ROWELL, C. J., MUNSON, START, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed October 25, 1905.

*False Imprisonment—Illegal Arrest—Imprisonment on Mesne
Process—Officer's Return — Requisites — Justification —
Amendment of Return—Jurisdiction of Justice after Re-
turn Day—Trespasser Ab Initio—Nonfeasance—Evidence
—Docket Entries—Attorney and 'Client—Client's Re-
sponsibility for Attorney's Acts.*

Docket entries are no record, but only minutes from which to make a
record; hence a certified copy of another court's docket entries are
not admissible to prove any act of that court.

In trespass for an illegal arrest, plaintiff's testimony, that he filed his
petition in bankruptcy before his arrest, does not show that he
was then in bankruptcy; for it does not show with sufficient cer-
tainty when he filed his petition, and the presumption of continu-
ance cannot be invoked, for want of sufficient data.

When the authority of an officer is special in respect of imprisoning a
man whom he has arrested on *mesne* process in a civil action, he
must imprison accordingly, and if he imprisons elsewhere or other-
wise, he is a trespasser.

Although, at common law, when an officer arrested a man on *mesne*
process in a civil action, he might make any place his prison, for
the command of the writ gave him a general authority in this
respect, yet V. S. 1701, 1703 has changed the common law in respect
of this general authority and makes the authority special in such
cases, notwithstanding the command of the writ remains the same.

When a person commits his claim against another to an attorney for
suit, he thereby invests the attorney, as his agent, with large dis-
cretion and most ample authority in everything pertaining to the
collection of the claim and the control and service of process; and
for all acts of the attorney within the scope of this authority the

client is responsible, regardless of whether they are warranted by the law.

In an action for false imprisonment, it appeared that, in a county where there then was a legal jail, plaintiff was arrested by an officer on *mesne* process returnable before a justice of the peace and sued out by an attorney on a debt placed in his hands by a client for suit; that the officer, by direction of the attorney given pursuant to an understanding with the client, took plaintiff into another county and there lodged him in jail, where he remained about an hour, when he was released. *Held,* that if plaintiff was thus imprisoned without his consent, both the officer and the client were trespassers and jointly responsible.

It was the plaintiff's right to be committed in the county where he was arrested, and it was the officer's duty to commit him there, in default of exposing property or procuring bail.

By so committing, the officer does not put it out of his power to obey his precept by having the defendant in that action before the justice at the time and place of trial; and, although if the officer took him out of jail for production in court, he would be unable to recommit him on the original writ—that having been returned into court—yet the authority inheres in the court to order him recommitted for want of bail.

*Whitcomb* v. *Cook,* 38 Vt. 477, and *Kenerson* v. *Bacon,* 41 Vt. 573 distinguished; and *Durant's* case, 60 Vt. 176 disapproved, *sub modo.*

When the plaintiff herein was released from arrest and imprisonment, the suit in which he was arrested was abandoned by the plaintiff therein, and the justice was not present at the time and place of trial, nor was the case continued. *Held,* that the jurisdiction of the justice lapsed, and that he had no authority six months afterwards to allow the officer to amend his return on the writ.

To make "return according to law" is not only to return the precept to the authority that issued it, but also to return with it a statement by the officer of his doings in executing it, and that statement must recite substantially all of his doings within the scope of the proper execution of the process, and must show that he has faithfully obeyed every lawful command of the process and of the statute, otherwise the return will be "undue," and insufficient for his protection.

The return of an officer on a justice writ issued as a capias: "I served this writ by arresting the body of the within named defendant,

Burt Gibson read the same in his hearing and this my return endorsed hereon," is insufficient, because it does not show how the defendant was disposed of after the arrest.

The officer's neglect to make a proper return is not a mere nonfeasance, any more than his neglect to return at all would be, in which case he would unquestionably be a trespasser *ab initio*.

Instead of saying that the want of a return, or an insufficient return, makes the officer a trespasser *ab initio*, it would be more accurate to say that a sufficient return is necessary to make the taking or arrest lawful *ab initio*.

Although the plaintiff in an action may not be responsible for the neglect of the officer who served the writ to make a sufficient return thereof, yet, if he abandons his suit before it is entered in court, he cannot justify under the writ.

TRESPASS for false imprisonment. Plea, the general issue, with notice of justification under process. Trial by jury at the March Term, 1903, Franklin County, *Tyler*, J., presiding. At the close of all the evidence the court ordered a verdict for the defendants. Judgment on verdict. The plaintiff excepted.

The writ upon which the plaintiff was arrested was returnable before a justice of the peace at Richford, Vt. The opinion fully states the case.

*C. G. Austin & Sons*, and *Alfred A. Hall* for the plaintiff.

The defendant should have committed the plaintiff at Newport. By committing plaintiff to the jail in St. Albans, defendant became a trespasser *ab initio* and cannot justify under the writ. *Lamb* v. *Day*, 8 Vt. 407; *Pierson* v. *Gale*, 8 Vt. 509; *Bond* v. *Wilder*, 16 Vt. 393; *Nelson* v. *Dennison*, 17 Vt. 73; *Abbott* v. *Kimball*, 19 Vt. 551; *Hall* v. *Ray*, 40 V. 576; *Kenerson* v. *Bacon*, 41 Vt. 573; *Hathaway* v. *Rice*,

19 Vt. 102; *Hooker* v. *Smith et al.,* 19 Vt. 151; *Vaughn* v. *Congdon,* 56 Vt. 111; *Carleton* v. *Taylor,* 50 Vt. 220.

At the time of his arrest plaintiff was in bankruptcy, and so privileged from arrest for any provable debt. Collier Bank, 91-95; *Deyo* v. *Van Valkenburg,* 5 Hill 242.

*Hogan & Hogan,* and *G. F. Ladd* for the defendants.

If the plaintiff was in bankruptcy at the time of his arrest, the justice was not thereby deprived of jurisdiction. *Brandon Co.* v. *Frazier,* 47 Vt. 88; *Boynton* v. *Ball,* 121 U. S. 457; *Rosenthal* v. *Nove,* 78 Am. St. Rep. 512; *Peck* v. *Jenness,* 43 Am. Dec. 573.

If the plaintiff was privileged from arrest because of his bankruptcy, this privilege was personal and could be waived. *Fletcher* v. *Baxter,* 2 Aik. 224; *Wood* v. *Kinsman,* 5 Vt. 588; V. S. 1735; *Petrie* v. *Fitzgerald,* 1 Daly (N. Y.) 401; 3 Cyc. 924.

Plaintiff's unsupported statement to the officer that he was in bankruptcy at the time of the arrest would not justify the officer in releasing plaintiff. *Pierson* v. *Gale,* 8 Vt. 511; *Gage* v. *Barnes,* 11 Vt. 195; *Churchill* v. *Churchill,* 12 Vt. 66; *Tarleton* v. *Fisher,* 2 Doug. 671; *Wilmarth* v. *Burt,* 7 Met. 257; *O'Shaughnessy* v. *Baxter,* 121 Mass. 515; 17 Fed. Cas. No. 9, 537; Collier, Bank., 5 Ed. pp. 601-12-13.

Since the writ upon which plaintiff was arrested issued from a court having apparent jurisdiction, and was regular on its face, trespass for false imprisonment cannot be maintained against either of the defendants. *Fletcher* v. *Baxter,* 2 Aik. 224; *Pierson* v. *Gale,* 8 Vt. 509; *Gage* v. *Barnes,* 11 Vt. 195; *Churchill* v. *Churchill,* 12 Vt. 66; *Marshall* v. *Town,* 28 Vt. 17; *Tarleton* v. *Fisher,* 2 Doug. 671; *Cameron* v. *Lightfoot,* 2 W. Bl. 1190; *Emery* v. *Hapgood,* 73 Mass.

55; *Wilmarth* v. *Burt,* 7 Met. 257; *Cassier* v. *Fales,* 139 Mass. 461; *Carle* v. *Delesdernier,* 29 Am. Dec. 508; Roberts' Digest, p. 489, § 30; Cooley's Const. Lim. 1 Ed. 398; *Wood* v. *Davis,* 34 N. H. 328; *Savacool* v. *Boughton,* 21 Am. Dec. 181; *Whitcomb* v. *Cook,* 38 Vt. 477; *Kenerson* v. *Bacon,* 41 Vt. 573; *Durant's Case,* 60 Vt. 176; *Kent* v. *Miles,* 68 Vt. 48; *Kent* v. *Miles,* 69 Vt., 379.

The justice had authority to allow the officer to amend his return. *Barnard* v. *Stevens,* 2 Aik. 429; *Brainerd* v. *Burton,* 5 Vt. 97; *Bent* v. *'Bent,* 43 Vt. 42; *Pond* v. *Campbell,* 56 Vt. 674; *Taylor* v. *Moore,* 63 Vt. 60.

ROWELL, C. J.  Trespass for false imprisonment. The defendants separately justified under a justice writ in favor of the defendant Holmes against the plaintiff, issued as a capias, brought to recover for goods sold and delivered, and served by the defendant Pharneuf by arresting the plaintiff in Orleans County.

The plaintiff claims that he was in bankruptcy in Massachusetts, where he lived, and therefore was privileged from arrest, as his discharge would release him from the debt sued for. But he can take nothing by this claim, for it does not appear that he was in bankruptcy. The certified copy of the docket entries in the bankruptcy court of Massachusetts, introduced to show that he was in bankruptcy, was not admissible, as those entries were no record, but only minutes from which to make a record. *Austin* v. *Howe,* 17 Vt. 654; *Armstrong* v. *Colby,* 47 Vt. 359.

Nor was the plaintiff's testimony that he filed his petition in bankruptcy before his arrest, sufficient, though admitted without objection; for it does not appear when he filed it, and it might have been so long before the arrest that

there had been a final adjudication on his application for a discharge, which would end his privilege; and the presumption of continuance cannot be invoked for want of sufficient data, if for no other reason.

But it was error to direct a verdict for the defendants, for the testimony tended to show, if it did not thereby appear, that the defendants were trespassers *ab initio.*

At common law, when an officer arrests a man on mesne process in a civil action, he may make any place his prison, for the writ is, *ita quod habeas corpus ejus coram,* etc., which is a general authority. But when the authority is special, he must imprison accordingly; and if he imprisons elsewhere or otherwise, he is a trespasser. *Swinstead* v. *Lyddal,* 1 Salk. 408; Bac. Ab. Trespass (D). But our statute has changed the common law in respect of a general authority, and makes the authority special in such cases, notwithstanding the command of the writ remains the same, for it provides that when a defendant is arrested on mesne process in a civil action, the officer shall commit him to jail in the county where the arrest is made, unless otherwise directed by law, if there is a legal jail there, unless he exposes sufficient property to secure the officer, or some person becomes surety to the satisfaction of the officer by indorsing his name on the writ as bail. V. S. 1701, 1703.

It appearing that there was a legal jail in Orleans County, where the arrest was made, and it not being otherwise directed by law, it was the duty of the officer to commit the plaintiff there in default of exposing property or procuring bail; and it was the plaintiff's right to be committed there, unless he waived that right, and the testimony tended to show that he did not. *Ellis* v. *Cleaveland,* 54 Vt. 437. But instead of committing him there, by direction of Holmes's attorney,

given pursuant to an understanding with Holmes, the officer took him to St. Albans, and lodged him in the Franklin County jail for safe keeping till the time of trial, where he remained about an hour in a cell, and then, by advice of counsel whom he consulted about leaving him there, and about making his return if he did leave him there, the officer took him back to Richford, where he was released by order of Holmes or his attorney on July 30, having been arrested at North Troy on July 28. This, if done without the plaintiff's consent, made the officer a trespasser *ab initio. Bond* v. *Wilder,* 16 Vt. 393; *Hall* v. *Ray,* 40 Vt. 576; *Clayton* v. *Scott,* 45 Vt. 386.

It is claimed that the officer might keep the plaintiff where he pleased, notwithstanding the statute, because if he committed him to jail in Orleans County by delivering him to the keeper thereof within the same, and giving the keeper an attested copy of the writ with his return thereon, as he would have to do by statute, he would thereby have transferred the custody and control of him to the jailor, and so have put it out of his power to obey his precept by having him before the justice at the time and place of trial. But *In re Jennison,* 74 Vt. 40, 51 Atl. 1061, holds the other way. There the relator was arrested on a justice writ issued as a *capias,* and committed to jail for want of bail; and yet the Court said it was the duty of the officer to obey his precept by producing the relator at the time and place of trial; and because he did not, the relator was discharged, but by agreement of the parties. That case is express authority for the proposition that by obeying the statute in respect of committing, the officer does not put it out of his power further to obey his precept by having the defendant before the justice at the time and place of trial. To hold otherwise would bring

the precept and the statute into conflict, whereas they should be made to harmonize if possible. And there is no difficulty in harmonizing them, for although the officer, by taking the defendant out of jail for production in court, would be incapacitated to recommit him on the original writ, because that, being returned into court, could not be taken out for that purpose; yet the court, especially as it is a court of record, would have ample authority to order him committed for want of bail, and such commitment would be deemed to be on the original writ, the same as it is by statute when a surety on mesne process delivers the principal into court in discharge of himself. Although there seems to be no statute for this, yet the authority inheres in the court, as much as the authority did before the statute to do what the statute says shall be done when the principal is surrendered, as shown by *Abells* v. *Chipman*, 1 Tyler, 377. And see 1 Tidd Pr. 285, 286. Cf. *Worthen* v. *Prescott*, 60 Vt. 68, 11 Atl. 690, and *State* v. *Shaw*, 73 Vt. 159, 50 Atl. 863, and following.

The cases referred to in support of said claim are not in point. What is said in *Whitcomb* v. *Cook*, 38 Vt. 477, about the officer having a right to put the defendant into any suitable place for safe keeping, was said in respect of keeping him after notice that he would appear before the magistrate for examination for a discharge from arrest, which suspended the right to commit until the examination was had. In *Kenerson* v. *Bacon*, 41 Vt. 573, commitment was made in disregard of such a notice, which was held to deprive the defendant of his right to go before the magistrate, because, as it would seem to have been thought, the officer could not take him out for that purpose. But this is not authority for saying that he could not take him out to produce in court, concerning which the precept commanded him, but did not com-

mand him concerning taking him before the magistrate for examination for discharge from arrest. In *Durant's* case, 60 Vt. 176, 12 Atl. 650, the process on which the arrest was made was a warrant in a criminal case. What is there said about its having "been repeatedly held in civil cases that an officer may use the common jail for the safe keeping of a person arrested on a *capias,* whom it is his duty to keep safely so to have him to appear at a time and place named," referring to *Whitcomb* v. *Cook,* 38 Vt. 477, is disapproved, if it means less than a commitment in the statutory sense. In *Kent* v. *Miles,* 68 Vt. 48, 33 Atl. 768, and 69 Vt. 379, 37 Atl. 1115, the precepts were warrants in a criminal case, and the authority was general, as neither the warrants nor the law required commitment to jail. But the plaintiff was committed, and rightly, it was held. In the 69th the Court expressly said that the case did not come within V. S. 1701, and said that that section relates to service of legal process when the officer is "directed by the process to commit to jail." Counsel seize upon this as making in their favor. But the language of the section makes it broader than that. It is, when "required by law to commit to jail." This embraces the case at bar, for although the process did not require commitment to jail, the statute did.

And the defendant Holmes is a trespasser *ab initio* as well as the officer, for he procured the suit to be brought and the arrest to be made, and is responsible for his attorney's direction to have the plaintiff taken to jail in St. Albans, for that direction was within the scope of his attorney's authority by virtue of his employment as such, who was thereby invested as Holmes's agent with large and liberal discretion and most ample authority in everything pertaining to the collection of the debt and the control and service of the process.

*Willard* v. *Goodrich,* 31 Vt. 597, where it is held that the attorney of an execution creditor has full authority as such to direct the officer as to the time and manner of enforcing the execution, short of discharging it without satisfaction.

Trespass for false imprisonment lies against the client and his attorney where the latter sues out an illegal *ca. sa.* and causes the defendant to be arrested and imprisoned thereon. "The client commands the attorney; the attorney actually commands the sheriff's officer; the real commander is the attorney; the nominal commander is the plaintiff in the action; so attorney and client are both principals." *Barker* v. *Braham,* 3 Wils. 368, 377. In *Bates* v. *Pillings,* 6 B. & C. 38, attorney and client were held jointly liable in trespass for the issue and service of an execution by the attorney's agent after the demand had been paid, though neither of them directed or knew of its issue. In *Cook* v. *Wright,* R. & M. 278, it was held that where a trespass was committed in the service upon the defendant therein of a *fi. fa.* sued out by an attorney, it was necessary, in order to make the execution creditors liable, to show that the attorney was retained in the case; and when that appeared, the creditors were made trespassers by the act of their attorney. In *Newberry* v. *Lee,* 3 Hill, 523, it is held that where an attorney of record illegally sues a *fi. fa.,* and thereby renders himself liable as a trespasser, his client is liable also, without showing that he specially directed its issue. In *Foster* v. *Wiley,* 27 Mich. 244, 15 Am. Rep. 185, it was held that where plaintiff's property was taken and sold on an execution wrongly issued at the instance of the defendant's attorney, the defendant was liable in trespass. The Court, speaking through Judge Cooley, said it seemed to be the result of the authorities that when one puts his case against another into the hands of an attorney for suit, it is a reason-

able presumption that the authority he intends to confer upon the attorney includes such action as the latter, in his superior knowledge of the law, may decide to be legal, proper, and necessary in the prosecution of the demand, and that consequently, whatever adverse proceedings may be taken by the attorney are to be considered, as far as they affect the defendant in the suit, as approved by the client in advance, and therefore as his acts, even though they prove to be unwarranted by the law. In *Poucher* v. *Blanchard*, 86 N. Y. 256, it was said not to matter that the sale of the boat in question was a pure trespass, for it had been frequently decided that a client may be responsible for a trespass committed by his attorney that he in no way authorized except by his general employment of the attorney. It is said in *Moulton* v. *Bowker*, 115 Mass. 36, that an attorney at law has authority by virtue of his employment as such, to do in behalf of his client all acts, in court or out, necessary or incidental to the prosecution and management of the suit, and which affect the remedy only, and not the cause of action. In *Morgan* v. *Joyce,* (N. H.), 27 Atl. Rep. 225, it was held that the plaintiff, by employing an attorney to bring and prosecute a suit, authorized him to give directions for serving the writ, and was bound by them.

When the plaintiff was released from arrest, the suit was abandoned by the defendant Holmes, who did nothing more with it. Nor was the justice present at the time and place of trial, nor within two hours thereafter, nor was the case continued. So it was never entered in court, and was discontinued, and the jurisdiction of the justice lapsed. He had, therefore, no authority six months afterwards, and after this suit was commenced and being prepared by the defendants for trial, to allow the defendant Pharneuf to amend his return

on the writ by adding thereto that he safely kept and detained the plaintiff within his precinct until the 30th of July, when he released and discharged him from custody by direction of Holmes's attorney. *Fletcher* v. *Pratt,* 4 Vt. 182; *Orvis* v. *Isle La Motte,* 12 Vt. 195. So the return as amended must be laid out of the case.

The testimony tended to show that the justice who signed said writ, kept all the writs and files in cases before him in which Holmes's attorney in said suit was attorney for the plaintiffs, in said attorney's office, and that the writ in that case was returned by the officer to said attorney's office before the return day, where it was put with the justice's other files, with a return upon it stating only that at North Troy in Orleans County, on July 28, 1902, "I served this writ by arresting the body of the within named defendant, Burt Gibson, read the same in his hearing, and this my return endorsed hereon." It does not appear that the fact that the writ was returned to the office of said attorney, was ever brought to the attention of the justice.

But treating that for present purposes as a sufficient returning to the justice, the officer's return was not sufficient to enable him to justify under the process. The writ commanded him to "make service and return according to law." This is the form prescribed by statute, which requires officers to execute and return writs and precepts "agreeably to the direction thereof," and subjects them to a penalty for making a false or an "undue" return. V. S. 1075, 1076. To make "return according to law" is, not only to return the precept to the authority that issued it, but to return with it a statement by the officer of his doings in executing it. *Turner* v. *Lowry,* 2 Aik. 72, 75. And that statement must recite substantially all of his doing within the scope of proper

execution, certainly, otherwise the return will be "undue," within the meaning of the statute, and may be essentially false.

Here the officer states nothing in his return but the mere fact of arrest and reading. Whether the defendant in that action exposed property, procured bail, was released by the magistrate on preliminary hearing, was committed for want of bail, or discharged by direction of the plaintiff in the action or his attorney, the return does not show, and but for the oral testimony we should not know what was done with him. It was the officer's duty to make a full and complete return of his doings, and because he did not, his return is "undue," and insufficient for his protection.

An officer who serves returnable process, shall not protect himself by it unless he shows that he has paid due and full obedience to its command. *Ellis* v. *Cleveland,* 54 Vt. 437. He must show that he has done all it was his duty to do. *Tubbs* v. *Tukey,* 3 Cush. 438. He must show that he has done all that was required of him in order to complete and fulfil the duty imposed on him. *Kent* v. *Willey,* 11 Gray, 368, 373. He must show that he made return of his writ, and did all the law required him to do. *Paine* v. *Farr,* 118 Mass. 74. He must faithfully obey every lawful command of the statute and the process, or he will be left without protection. *Boston & Maine R. R. Co.* v. *Small,* 85 Me. 462, 35 Am. St. Rep. 379, 383. There are exceptions to this rule; as, when the parties settle the suit, and agree that the writ need not be returned. *Paine* v. *Farr,* above cited. But that element does not appear in this case.

Nor is the officer's neglect to make a proper return a mere nonfeasance, any more than his neglect to return at all would be, in which case he would unquestionably be a tres-

passer *ab initio.* In *Moore* v. *Robbins,* 7 Vt. 363, 367, it is said that the neglect of an impounder to proceed with the distress according to the statute, makes him a trespasser *ab initio,* because his neglect is not a mere nonfeasance, but is analogous to a sheriff's neglect to return a writ. So a tax collector who neglects to offer a distress for sale within the time prescribed by statute, is not protected, for he is thereby deprived of a justification for the taking, and stands as though he took without authority, and therefore is a trespasser *ab initio.* *Pierce* v. *Benjamin,* 14 Pick. 356, 360. So an officer is a trespasser *ab initio* who neglects to sell property on an execution. *Bond* v. *Wilder,* 16 Vt. 393. The resolution in the *Six Carpenters' Case,* that "not doing cannot make a party who has authority or license by law a trespasser *ab initio,* because not doing is no trespass," is criticised because it is the disobedience, and not the act, that deprives of protection, and that disobedience can come from not doing as well as from doing. But that resolution is followed in this State. The true view of the matter when applied to the non-return or the insufficient return of process seems to be, that if an officer arrests a person or seizes goods on a writ that it is his duty to return, he never has a justification under it unless he discharges that duty; that it is inaccurate to say that he is made a trespasser *ab initio* by not returning; but rather, that for want of a return or a proper return, he never has a justification; that therefore, instead of saying that the want of a return makes him a trespasser *ab initio,* it would be more accurate to say that the presence of a return is necessary to make the taking lawful *ab initio.* *Shorland* v. *Govett,* 5 B. & C. 485.

But although the defendant Holmes may not be responsible for the officer's neglect to make a proper return, yet

having abandoned his suit before entry, he cannot justify under the writ.

*Reversed and remanded.*