IN RE LIOLA EDSON.

November Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 20, 1912.

*Habeas Corpus—Custody in Default of Commitment—Proceedings —Findings—"Commitment"—P. S. 6116—Time of Commitment—"Forthwith"—Unbriefed Exceptions—Waiver.*

On the issue whether a girl sentenced to the Industrial School, which refused to admit her because it was quarantined, should be discharged on habeas corpus, it is immaterial that the superintendent of the Industrial School told the constable having the custody of the girl to take her home and the superintendent would send for her when he wanted her.

When an officer has one under legal arrest, and it is the officer's duty to detain his prisoner until he can have him before some court, or to commit him to some institution, he may in the meantime detain him in any suitable place such as the common jail, and that detention is not a "commitment" to jail.

Where a constable having the custody of a girl fourteen years of age, under a mittimus directing any sheriff or constable in the State to commit her to the Industrial School, and the girl escaped from his custody after the Industrial School refused to admit her because it was quarantined, and the constable thereupon placed her in the custody of the sheriff of the county whence he took her, to whom he also delivered the mittimus, that was not a "commitment" of the girl to jail, and when the sheriff thereupon placed the girl for safe keeping in the woman's ward in the jail with two other women, who were about eighteen years of age, that was not in violation of P. S. 6116, providing that a child under the age of sixteen years, "committed" to a jail shall be kept separate from other prisoners, as the word "committed" is used in that statute in the techincal sense; nor, in the circumstances, was the court below wrong in refusing to find that the woman's ward of the jail was an improper place for the detention of the girl.

"Forthwith" means "as soon as possible," and so where a mittimus directed that a girl be committed to the Industrial School "forthwith," the fact that she was not at once committed because the institution was under quarantine when she was taken there by the officer attempting to serve the mittimus would not require that she be released from custody.

Exceptions not briefed by the exceptor will not be considered.

HABEAS CORPUS. Heard at the March Term, 1911, Washington County, on the pleadings and evidence, *Miles*, J., presiding. On the facts found, judgment that the relator is not unlawfully restrained of her liberty, and that she be remanded to custody. The relator excepted. The opinion states the case.

*Richard A. Hoar* for the relator.

*J. Ward Carver, State's Attorney*, for the State.

HASELTON, J. This is a habeas corpus proceeding. Hearing was had before the Washington County court, and a written finding of facts was made and filed by the court. The judgment of the county court as appears by the docket entries was that the relator, Liola Edson, is not unlawfully restrained of her liberty and that she be remanded to custody. The relator excepted.

January 16, 1911, the relator, a girl of fourteen years of age, was, before a justice of the peace at Warren, in the county of Washington, convicted of petty larceny and was sentenced to the Vermont Industrial School, at Vergennes, during the remainder of her minority which will terminate January 9, 1915. A mittimus pursuant to the sentence was issued by the justice and put into the hands of W. E. Dana, a constable. The mittimus directed any sheriff or constable in the State, to commit the relator.

The constable, by virtue of the mittimus, took the relator to the Industrial School; but that was under quarantine because of a contagious or infectious disease then there prevailing, for which reason the relator was not received and could not be received into the institution.

The relator testified that the superintendent of the Industrial School told the officer to take her back home, that the superintendent said that when he wanted her he would send for her. The court made no finding on this testimony, and the relator excepted to the failure of the court to find in accordance with it. But the court was right in omitting any finding in that regard, for it is immaterial what the superintendent told the officer to do with the relator as long as she was not committed to the institution over which he had charge. We do

not need to consider what his authority, or that of the Board of Penal Institutions, would have been had she in fact been committed.

From Vergennes the constable took the relator back to Montpelier, in the county in which she lived and had been tried, where he provided her with a room at a hotel. She remained there over night, but the next day, in the absence of the constable, she went out upon the streets in Montpelier, and fell in with a young man, a bootblack, who invited her to his room, and, while they were together, told her that the constable was about to take her to Rutland, and offered to assist her in making her escape, and promised to take her to her father's house. During this time the constable made a search for her and later in the day found her at the hotel. Thereupon he delivered her to F. H. Tracy, Sheriff of Washington County, for safe keeping until such time as the quarantine should be raised from the Industrial School, and, as the findings of fact in one place state, until Sheriff Tracy should be enabled to commit her in accordance with the precept of the mittimus. The relator excepted to the finding that she was left where she was until Sheriff Tracy could commit her, on the ground that there was no evidence that she was left with him to enable him to remove her to the Industrial School. But this exception states a merely verbal criticism. The process was directed to any sheriff or constable in the State, and, while it was held by Sheriff Tracy, and the relator claims that he did hold it, it was a command to him to commit her; and the findings state that the failure to commit her was wholly due to the quarantine, a finding which excludes the idea that she was detained to await the convenience of the sheriff or of Mr. Tracy personally.

The relator claimed that she had been "committed" to the jail in Washington County, and excepted to the failure of the court so to find, for the reason that the sheriff's return showed that the constable left with the former the mittimus on which she was held. That the mittimus was so left and that she was held by virtue thereof fairly appears from the sheriff's return, but the officer's return as a whole shows that she was not "committed" to jail but that all that was done in that regard was to transfer the relator to the custody of the sheriff

and also to transfer to the sheriff the mittimus as his authority for holding the relator until the precept commanding commitment to the Industrial School could be carried out.

After the relator was given into the custody of Sheriff Tracy, following her detention at the hotel as above stated, the sheriff placed her, for safe keeping, in the woman's ward of the jail at Montpelier, where she remained until these proceedings were instituted, a period of about two months. During this time there were confined with her two women above the age of eighteen years who were awaiting trial, one on a charge of obtaining goods under false pretenses, and one on a charge of adultery. The claim is made and argued that the detention of the relator in the ward with these two prisoners rendered the detention unlawful by force of P. S. 6116, which reads: "A child under the age of sixteen years committed to a jail shall be kept separate from older persons committed to await trial, or on conviction for crime."

The terms of this statute did not make the detention of the relator illegal, for she was not "committed" to the jail, and the word "committed" seems to be used in a strict technical sense, for one reason, because the section follows immediately a section which beyond all question refers to commitments in the strict sense. When an officer has one under legal arrest, by virtue of either civil or criminal process, or without process, where that can be dispensed with, and it is his duty to detain his prisoner until he can have him before some court or may properly commit him to some reformative or penal institution, he may in the meantime detain him in any proper and suitable place, and he may use the common jail as a suitable place of detention and such detention is not deemed a commitment to jail. *Admr. of Whitcomb* v. *Cook*, 38 Vt. 477, 485; *Kenerson* v. *Bacon*, 41 Vt. 573; P. S. 2057, 2219; *In re Durant*, 60 Vt. 176, 183, 12 Atl. 650; *Kent* v. *Miles*, 68 Vt. 48, 33 Atl. 768; *Kent* v. *Miles*, 69 Vt. 379, 37 Atl. 11,15; *State* v. *Dohney*, 72 Vt. 260, 47 Atl. 785.

No doubt, however, the general spirit and purpose of the statute should be given effect. In this view apparently, the relator asked the court to .find upon all the evidence that the place of her detention was an improper one. The court refused so to find and the relator excepted. The transcript is referred

to, and under this exception has been fully examined. The testimony tended to show that at the time this complaint was brought, the woman who had been in jail charged with adultery had been gone about a week; that she had gone to the Montpelier Hospital. There was no testimony tending to show that she had ever been tried for the offence charged, though remarks of counsel indicated that she had, but did not indicate the result of the trial. The testimony tended to show that at the time the complaint was brought the only person who occupied the woman's ward with the relator was a young woman charged with obtaining goods under false pretenses, and that she had subsequently been placed on probation, which would indicate that she had been convicted but was not regarded as a hardened offender. The testimony tended to show circumstances connected with the relator's absence from the hotel, hereinbefore referred to, which justified a stricter confinement of her than might otherwise have seemed necessary, conduct in fact, which if pursued after she had been committed to the Industrial School, might have been regarded as ground for her removal to the House of Correction. P. S. 6032, 6033.

Not only was the relator not "committed" to the jail, but, for we regard the spirit of the statutes, the testimony relating to the circumstances of her being placed and detained there in the woman's ward were such that we cannot say that the court was wrong in refusing to find that the woman's ward of the jail was an improper place for her "detention." The exception based upon the claimed violation of the statute is not sustained, nor is the exception based on the claimed impropriety of the place of detention.

Our statutory system does not, as seems to be claimed by the relator, contemplate that always and under all circumstances children under sixteen convicted of offences against the law must be kept separate from older offenders, for not only, as we have seen, does it provide for an alternative sentence to the House of Correction in the case of a child sentenced to the Industrial School in the first instance, but it also provides that the county courts, in their discretion, may commit persons over the age of sixteen to the Industrial School, where, of course, the children there under the age of sixteen are, or may be, to

a greater or less extent brought into association with such older persons. P. S. 6034.

The relator also excepted to the judgment on the facts found. All questions relating to this exception, relied on in the brief, have already been considered, unless the relator is taken to claim that, when the officer was prevented from committing her to the Industrial School in consequence of the quarantine, she should have been permitted to go at large. And we think from one passage in the brief that the relator intended to make this claim. We do not have occasion to consider how this claim would stand if the Industrial School had been destroyed, or if any obstacle permanent in its nature had been interposed to her commitment. The finding is simply to the effect that a quarantine of the Industrial School temporarily prevented the relator's commitment there.

The mittimus directed her commitment "forthwith" which means "as soon as may be," and a temporary obstacle like the sudden sickness of the relator, had that occurred, which would be deemed an act of God, or the quarantine of the institution that did exist and which was an act of law, could only have the effect to postpone the commitment and to enlarge the meaning of "forthwith." That a quarantine is an act of law cannot be disputed. If it is not such an act, it is not a quarantine, and no question is made in this case but that, at the time in question, the Industrial School was legally quarantined in consequences of a contagious or infectious disease then prevalent therein.

One or two exceptions of minor importance were taken but not briefed. The are not considered. For exceptions not relied on in the brief of an exceptor are not entitled to consideration.

By disposing of the case on the questions raised and argued, we are not to be understood as intimating that if the relator had, in fact, been illegally committed to the Washington County jail it would follow that she should be set at liberty. See *In Re Robert Fitton*, 68 Vt. 297, 35 Atl. 319. We do not need to consider what would have been the proper order for the county court to make had the case been different from the one presented.

*Judgment affirmed.*