## *In re* LUTHER L. DURANT.

*Criminal Law. County Clerk, Powers of. Warrant. Illegal Commitment. Practice.* R. L. s. 1459. *Perjury.*

1. The powers of the clerk of the County Court are *quasi* judicial; and he h,'s authority under the statute—R. L. s. 819—to issue in term time or vacation, as circumstances may require, a warrant, in due course, without an express order from the judges, for the arrest of a person indicted, and for his detention for trial at the next term of the court. .

2. It is not necessary that a warrant issued for the arrest of a person indicted, and for his detention for trial, should specify with particularity the accusation in the indictment; thus, a warrant is not defective, which was issued for the arrest of a person under indictment, where its language was "to answer to a complaint charging him with the crime of perjury."

3. A person indicted for perjury may be lawfully committed to jail on a warrant issued in vacation for his arrest and detention for trial; but he. is entitled to give bail.

4. The prisoner was arrested in one county and committed to jail in another county, where he was under indictment for perjury. In a few days afterwards he was discharged, but was immediately re-arrested by the same officer on another warrant issued for his detention for trial; *Held*, that if the first commitment was illegal under the statute—R. L. s. 1459—it did not effect the legality of the second commitment.

*Habeas Corpus.* Heard by VEAZEY, J., November 7, 1887, and passed by him, with consent of counsel, to the Supreme Court. Petition dismissed.

The first warrant issued against the relator was as follows :

STATE OF VERMONT, ⎫ ss. :
ORLEANS COUNTY, ⎬
To any sheriff or constable in the State, greeting : By the

In re Luther L. Durant.

authority of the State of Vermont, you are hereby commanded to apprehend the body of Luther L. Durant, of Montpelier, in the county of Washington, and have him forthwith to appear before the County Court, in and for said county, at Newport, to answer to a complaint charging him with perjury. Fail not, and make due service and return according to law. Dated at Newport, this 14th day of September, A. D. 1887.

H. B. Cushman,

Clerk.

The following is a copy of the sheriff's return indorsed upon said warrant:

State of Vermont, ss.:

At Montpelier, in said county, this 28th day of September, A. D. 1887, I made service of this warrant on the within named Luther L. Durant by arresting his body; read the same in his hearing, and on the same day committed him for safe keeping to the county jail in Newport, in the County of Orleans and State of Vermont, and left with the keeper of said jail within said jail a true and attested copy of the original warrant, with my return of commitment thereon indorsed.

Attest: · L. D. Miles,

Sheriff.

The second warrant issued against the relator was as follows:

STATE OF VERMONT, } ss.:
ORLEANS COUNTY.

To any sheriff, etc., greeting: By the authority of the State of Vermont, you are hereby commanded to apprehend the body of Luther L. Durant, of Montpelier, in the County of Washington, and him safely keep so that you have him to appear before the County ·Court in and for the County of Orleans, at Newport, at the next regular term thereof, to be holden at said Newport on the first Tuesday of February, A. D. 1888, to answer to a complaint charging him with the crime of perjury. Fail not, and make due service and return according to law. Dated at Newport this 7th day of October, A. D. 1887.

H. B. Cushman,

Clerk.

The following is a copy of the sheriff's return indorsed on said warrant:

In re Luther L. Durant.

STATE OF VERMONT, ⎫ ss. :
ORLEANS COUNTY.  ⎰

At Newport, in said county, this 7th day of October, A. D. 1887, I then served this warrant on the within named Luther L. Durant by arresting his body, read the same in his hearing, and on the same day lodged him in the county jail in Newport aforesaid, for safe keeping, and on the same day left with the keeper of said jail, within said jail, a true and attested copy of this warrant with this my return of commitment thereon indorsed.　　　　　　　·Attest :　　　　L. D. MILES.
　　　　　　　　　　　　　　　　　　　　　　　Sheriff.

F. E. Alfred, Esq., State's attorney for Orleans County, was notified of the petition for the writ of *habeas corpus*, and of the time of the hearing before Judge VEAZEY.

The other facts are sufficiently stated in the opinion.

*T. J. Deavitt* and *Heath & Fay*, for the relator.

The law requires the commitment of a criminal to be made in the county where the arrest is made, if there is a jail in such county. Rev. Laws, ss. 1459, 1614 ; *Clayton* v. *Scott*, 45 Vt. 386 ; *State* v. *Malloy*, 54 Vt. 96.

The re-arrest at Newport was only a continuation of the wrong, and made the act a trespass *ab initio*. The first warrant did not authorize the commitment. *State* v. *Lamoine*, 53 Vt. 568.

There being no court in session when the second warrant was issued, the clerk had no authority to issue it. Rev. Laws, s. 817.

The relator being discharged from his arrest upon the first capias, is unlawfully detained, because the clerk had no authority to issue the second capias.

The relator is deprived of an opportunity to procure bail for six months. 10 Jones, 328 ; 2 Wm. Bl. 1204 ; *Rex* v. *Winter*, 2 T. R. 89 ; 107 Mass. 239.

The second warrant did not sufficiently apprise the relator of what he was to answer. He could not be lawfully arrested upon a complaint for perjury.

*F. E. Alfred, State's Attorney*, for the State.

In re Luther L. Durant.

The opinion of the court was delivered by

VEAZEY, J.  This cause which is a *habeas corpus* proceeding was transmitted into the Supreme Court, under the statute, and was heard by the whole court.  ·

It is agreed that the relator was indicted for perjury by the grand jury at the September Term of Orleans County Court, 1887; that upon the bill being returned and filed, a warrant for the arrest of the relator was immediately issued, signed by the clerk, while the court was in session, and was put into the hands of L. D. Miles, the sheriff of said county for service; that, on the 28th day of September, 1887, and after said court had adjourned without day, said Miles arrested the relator in Montpelier in the county of Washington, where he lived and where there was a legal jail, and took him against his protest to Newport, and committed him to the jail in Newport, in said county of Orleans for safe keeping; that at the time of said arrest the Washington County Court was in session at said Montpelier, and the relator demanded of said Miles that he be taken before said court or one of the judges thereof for the purpose of fixing and taking bail, but the same was refused by said Miles; that on the 7th day of October, 1887, said Miles discharged the relator from his said arrest, but immediately thereafter re-arrested him at said Newport on another warrant which had been put into his hands and which was dated on the 7th day of October, 1887, and was signed by said clerk, and again committed him to said jail in Newport for safe keeping; that the first warrant, which was issued while the Orleans County Court was in session as aforesaid, commanded to have the relator forthwith before that court to answer a complaint of perjury; that the said second warrant, which was issued after the adjournment of said court, commanded to safely keep the relator so as to have him before the said Orleans County Court at the next term thereof, to answer as before; that in these proceedings the relator consented to nothing; but protested, and waived no rights.

Upon the record consisting of the complaint, the writ, and return thereon, supplemented by the above agreed facts, it is insisted that the arrest and detention of the relator was illegal for several reasons.

One reason as alleged is, that there being no Orleans County Court in session when the last warrant was issued, the clerk had no authority to issue it.

Section 819, R. L. prescribes the duties of clerks, and in paragraph III. it says : " Record any other proceedings that the court may direct, and make and sign all process *regularly issuing* from either of the courts aforesaid, under the direction of the judges."

It is claimed in behalf of the relator, under this paragraph, that the clerk can issue no process except as expressly directed by the judges. This is against the practical construction which this statute has received.

Neither courts nor judges have been in the habit of expressly ordering clerks to make, sign and deliver to prosecuting officers or sheriffs, warrants for the apprehension of persons indicted, but they have been issued by the clerks as an authorized duty in regular course, without express direction.

When in this State as in many others, the first step in court against the suspected person is to be taken by the grand jury, this body *presents* to the tribunal a written accusation of his crime ; which presentment, after being returned into court, and made a part of its record by order of the court, is called an indictment. The next step is the arrest of the person charged, if not already in custody, and he is brought in and the indictment read to him in open court, and he is required to plead to it. This is called the arraignment.

The warrant for the arrest is the process regularly issuing upon the indictment. The clause " under the direction of the judges " confers upon them the right to make orders, the right of supervision, but does not require an express order to invest the clerk with authority to issue a warrant for arrest in due

In re Luther L. Durant.

course. The statute requires clerks to make and keep dockets of causes pending, etc., and also to "record any other proceedings that the court may direct." The practice is for clerks to make a docket entry of each order of the court in a cause, and for courts to so direct; but I apprehend no clerk's docket in the State shows an entry of an order to issue warrants for arrest on indictments. The practice is the same in issuing executions in civil causes, and mittimuses in criminal causes. They are issued at the hand of the clerk, and usually, when regularly issued, without express order or docket entry of such order. The rendition and entry of the judgment on the docket has always been regarded as carrying with it all the authority which is required from the court to the clerk to issue such regular final process as the judgment warrants. When special action is warranted and taken, an appropriate order is made and noted. The clerk is an essential, constituent part of a court. 1 Bouvier, Law Dict. p. 325. He does not act independently of the judges but in conjunction with them, subject to direction and supervision, but having authority and duty prescribed by statutes; and his acts thus prescribed and performed in regular course in the progress of a cause, have force and effect as authorized acts without express order of the judges. So we hold that when the court receives the presentment of a grand jury and causes the same to be filed, and they become a record in court, which constitute an indictment, this carries with it all the order or authority which is required from the court to the clerk, taken in connection with the statute above quoted, to issue one or more warrants for the arrest of the person indicted; and to issue them in term time or vacation as circumstances may require. Without undertaking to define what, if any, may be the inherent authority of clerks under our system, we hold further, under said statute, construed in the light of other statutes appertaining to powers and duties of clerks, that when a proceeding is in progress which at a certain stage requires, in regular furtherance, that a warrant should be issued, it is the official province of the

clerk to issue the same without any order of the court to that end; that in short, the word " direction," in the clause " under the direction of the judges," is to be taken in the sense of authority to direct as circumstances may require, and not as requiring direction in order to confer authority upon the clerk to act. If this seems to invest clerks with *quasi* judicial power, it is not a new feature attaching to the office. At a very early day certain of the clerks of the Court of Chancery performed the duties which are now devolved upon masters in chancery.

They were to the number of twelve distinguished from clerks under them by the name of masters in chancery and were the assistants to the chancellor, who referred to them interlocutory orders for stating accounts, computing damages and the like. In process of time, as business increased, the clerk whose duty it was to keep the records, or as formerly called the rolls, became distinguished as master of the rolls. II Bouvier, p. 121. So our rules of court and statutes have long distinctly recognized the *quasi* judicial function in the clerk in various ways; and notably in the matter of assessment of damages and taxing of costs. The policy of legislation with us has been constantly to enlarge the powers of clerks.

It is further claimed that the warrant upon which the relator is held, does not sufficiently apprise him of that to which he is to answer. The language is " to answer to a complaint charging him with the crime of perjury." It is not claimed, as it could not fairly be, but that this would be sufficient but for the use of the word *complaint*. As to that, it is insisted that the relator could not be arrested lawfully upon a *complaint* for perjury and be held to appear before the County Court; because perjury is by our statute a felony and the proceeding must be by indictment, as the punishment may be by imprisonment more than seven years.

We do not think the word *complaint* in this warrant imports that the instrument charging the perjury is a technical complaint, as the term is used in the statute. The warrant would

In re Luther L. Durant.

have been sufficient if it had omitted the word complaint or any corresponding word, and had read " to answer to the crime of perjury." The warrant is based upon the indictment and the naming of the crime in the warrant is sufficient, if necessary, which is doubtful, to identify the indictment, and for the purpose of fixing bail. Warrants have been in use in some counties back of all memory, and with approval of courts, and are now in use, which simply say, " to answer to a bill of indictment presented ＊ ＊ ＊ and filed ＊ ＊ ＊." etc., without even naming the crime charged.

The object of the warrant is to bring the accused person into court to answer to whatever stands charged against him. We are unable to see what possible advantage could accrue to the arrested person to have the warrant specify with particularity the accusation.

It is further objected that the relator could not lawfully be committed to jail on this warrant. The warrant commanded to arrest, etc., and " safely keep so that you have him to appear" at the next term, etc. It has been repeatedly held in civil causes even, that an officer may use the common jail for the safe keeping of a person arrested under a *capias*, whom it is his duty to safely keep so to have him to appear at a time and place named. *Whitcomb* v. *Cook*, 38 Vt. 477. This objection is overruled.

It is also urged that the relator would be deprived of his liberty by the arrest in vacation, because not being committed for trial he could not give bail, there being no power in a judge to take bail except when committed for trial. This point is made upon false assumption. The arrest and commitment was for trial. Resort is to be had to the warrant to see the purpose of the arrest. That states with sufficient certainty for a warrant that the relator is taken and held for trial.

It is finally objected that the relator was unlawfully arrested on the first warrant in Washington County, and unlawfully taken out of that county to Newport, in Orleans County, and

that Sheriff Miles having participated in these alleged unlawful proceedings, cannot justify his subsequent action under the second warrant; that it was but a continuation of his previous illegal acts. The ground of claim that the first arrest and removal to Newport was illegal, is in substance that the first warrant did not authorize an arrest after the Orleans County Court, at the September Term, had finally adjourned; but if it did, the sheriff should have given the relator opportunity to give bail in Washington County as requested, or upon failure to give bail, should have committed him to the jail in that county; and this under section 1459, R. L., which provides that commitment shall be in the county where the arrest is made, if there is a legal jail in that county, unless otherwise directed by law.

It is unnecessary to pass upon this alleged illegality; because, assuming the claim to be sound, it would be no excuse for the sheriff to refuse to execute the valid process finally put into his hands. This point was so held in the recent case, *In re Miles*, 52 Vt. 609. The language of the court was: the sheriff's " duty was fixed by his office and the warrant, and it was obligatory upon him, however others, or even himself, might have violated law and duty in other respects," citing *State* v. *Brewster*, 7 Vt. 118.

The relator was at large at Newport at the time of the arrest under the second warrant; and being arrested there in the county where the court is held to which the warrant was returnable, it was clearly proper for the sheriff to resort to that county jail for safe keeping of the prisoner. We do not mean to imply that the same would not be the case even if arrested on such warrant as this in another county. That question is not here involved.

It is held that the relator is not unlawfully restrained of his liberty, and the petition is dismissed. Upon motion, the relator was admitted to bail.