FRANKLIN S. CAPRON *vs.* CITY OF TAUNTON.

Bristol.    May 13, 1907. — June 18, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Municipal Lighting Plant.    Municipal Corporations*, Officers and agents.

By St. 1905, c. 410, § 3, amending R. L. c. 34, § 20, which defines the powers and duties of the manager of a municipal lighting plant, the power to hire and discharge employees in such a plant operated by a city is vested originally in the manager, and not in the mayor.

The manager of a municipal lighting plant operated by a city discharged an employee against the express orders of the mayor of the city, and refused to reemploy him although the mayor demanded that he should. Acting under orders of the mayor, the discharged employee reported daily for work to the manager. No regulations regarding the management of the plant had been established by the mayor. In an action by the discharged employee against the city to recover

for services during the period after his discharge when he was reporting daily for work, it was *held*, that, under St. 1905, c. 410, § 3, amending R. L. c. 34, § 20, the mayor did not have power to hire or discharge employees in the municipal lighting plant, and, no contrary regulation having been established by the mayor, the manager's discharge of the plaintiff was within his powers, and the plaintiff had no cause of action.

CONTRACT. Writ in the Superior Court for the county of Bristol dated June 18, 1906.

At the trial before *White*, J., without a jury, the facts were agreed upon. The defendant owned and operated a municipal lighting plant and one Coleman was the manager duly appointed and qualified in accordance with the statutes relating to the matter. The defendant's mayor had established no regulations whatever under which the manager was to perform his official functions. The manager discharged the plaintiff, who had been acting as chief engineer, and employed another in his place. The mayor demanded of Coleman that he reinstate the plaintiff and, in accordance with directions by the mayor, the plaintiff reported to Coleman each day for work, but Coleman refused to employ him. The position of chief engineer of the municipal lighting plant was not on the civil service list. This action is to recover for services on the days when the plaintiff reported to Coleman but was refused employment.

The case was submitted on briefs.

*W. E. Kelly*, for the plaintiff.

*H. F. Hathaway*, for the defendant.

BRALEY, J. The plaintiff's right to recover depends upon the construction to be given to the statutes permitting the defendant to manufacture and sell electricity for supplying light for the use of the public. By St. 1891, c. 370, as amended by St. 1893, c. 454, cities and towns were authorized to manufacture and distribute gas or electricity to furnish light for municipal use and for the use of their inhabitants, either by erecting suitable works, or by purchasing or leasing works already in operation. Having been declared constitutional, this legislation enabled them to inaugurate and engage in a commercial undertaking involving the expenditure of the public revenue, which before, for want of authority, had been confined solely to private capital and enterprise. *Opinion of the Justices*, 150 Mass. 592. *Spaulding* v. *Peabody*, 153 Mass. 129. *Dickinson* v. *Boston*, 188 Mass. 595,

598. Section 8 of the original act, which provided that the general management of the business was to be exercised by an officer with the title of manager and enumerated his duties, which included the hiring and discharging of employees, expressly provided that such duties " shall be intrusted [to him] subject to any ordinances established by the city council in a city, or the by-laws or regulations established in a town." The term of his office was made dependent upon the pleasure of the mayor or selectmen, or, under St. 1893, c. 454, § 10, of a municipal light board, if organized, to whom were respectively given the power of appointment and removal; and, in the subsequent revision of the statutes, all essential provisions of this section were retained, and the power to remove at will, although not specified, could be exercised unless a different tenure was expressed in the appointment. R. L. c. 34, § 20. But St. 1905, c. 410, amended R. L. c. 34 by recasting certain sections, and by § 3 substituted for R. L. c. 34, § 20, a new section in which, after providing for the appointment of the manager and designating his powers, it was required that the city council or the selectmen or the municipal light board, if any, respectively, should fix his term of office and compensation. By this new section, instead of the manager's being subject to the regulations of either an ordinance or a by-law, the right of supervision in cities was conferred solely upon the mayor, and in towns upon the selectmen, or a municipal light board, if the town had voted to create such a commission.

By these enactments an elaborate system of municipal lighting had finally been developed. But if the Legislature had intended that, upon his appointment and giving of the required bond, the manager should be absolutely free to act independently of all supervision, the language of the statute previously quoted as well as the phraseology of later revisions, which are the same in purport, would not have been used ; and, therefore, although charged with the performance of duties involving large expenditures, with much technical detail of operation, he remained a subordinate official. While neither a city nor a town was required to prescribe by ordinance or by-law the particular mode in which his statutory duties should be performed, they were empowered to do so when deemed expedient, and the transference of supervision did not limit or change the authority of control which had

been granted, for, instead of being placed under the control of the city council or of the town, the manager is placed "under the direction and control" of the officials by whom he is appointed. St. 1905, c. 410, § 3. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382, 383. They accordingly could frame such general regulations concerning the exercise by him of his statutory powers as were found to be reasonably required, and as did not violate the statute.

The defendant, before the revision, acquired under the earlier acts by purchase an electric light plant, which it has since operated, and where, until discharged by the manager, the plaintiff was employed as an engineer. In the agreed statement of facts on which the case is before us, it appears that, after the changes effected by St. 1905, c. 410, § 3, the city council by an ordinance provided for the compensation of the manager, and fixed his term of office, but no regulations whatever were established by the mayor under which the manager should perform his official functions. Although, acting in accordance with the provisions of the statutes already cited, the municipality at its option might lawfully establish this important department of public service as a co-ordinate branch, and local governmental control could be retained over such department in common with other departments, the legislative purpose manifest throughout is, that original authority to contract in behalf of the city for the hiring of all employees, or to discharge them, was delegated only to the manager. St. 1891, c. 370, § 8. R. L. c. 34, § 20. St. 1905, c. 410, § 3. *Weymouth & Braintree Fire District* v. *County Commissioners,* 108 Mass. 142, 144. It therefore follows that, the plaintiff having been lawfully discharged and the mayor not being vested with any authority to re-employ him, he has no cause of action either for wages or for damages against the city.

*Judgment for the defendant affirmed.*