COMMONWEALTH *vs.* DANIEL O'CONNELL'S SONS, INC.

Franklin. September 21, 1932. — January 4, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Public Work. Labor. Constitutional Law*, Due process of law.

That part of G. L. (Ter. Ed.) c. 149, § 26, which provides that, in the employment of mechanics, teamsters and laborers in the construction, addition to and alteration of public works by persons contracting with the Commonwealth or a county, town or district, the "wages for a day's work paid to mechanics and teamsters [so] employed . . . shall be not less than the customary and prevailing rate of wages for a day's work in the same trade or occupation in the locality where such public works are under construction or being added to or altered," is unconstitutional in that it violates the Fourteenth Amendment to the Constitution of the United States. Following *Connally* v. *General Construction Co.* 269 U. S. 385.

INDICTMENT, found and returned on March 18, 1932, and described in the opinion.

At the trial of the indictment before *W. A. Burns*, J., the defendant's counsel raised the question of the constitutionality of that part of G. L. (Ter. Ed.) c. 149, § 26, under which the indictment was brought; namely, that part which provides that in the employment of mechanics, teamsters and laborers in the construction, addition to and alteration of public works by persons contracting with the Commonwealth or a county, town or district, the "wages for a day's

work paid to mechanics and teamsters employed in the construction, addition to or alteration of public works as aforesaid shall be not less than the customary and prevailing rate of wages for a day's work in the same trade or occupation in the locality where such public works are under construction or being added to or altered"; and the judge reported the question for determination by this court.

*J. S. Begley,* for the defendant.

*J. T. Bartlett,* District Attorney, for the Commonwealth.

RUGG, C.J. This is an indictment for violation of St. 1931, c. 377, amending the earlier statute and now found in G. L. (Ter. Ed.) c. 149, § 26.. Trial by jury having been waived, the defendant was found guilty upon the first three counts. During the trial the question of the constitutionality of that part of the statute upon which the indictment was framed was raised by the defendant. That question was reported by the trial judge for our decision at the request of the defendant after conviction. G. L. (Ter. Ed.) c. 278, § 30. *Commonwealth* v. *McCan,* 277 Mass. 199.

The agreed facts relevant to the question reported are in substance as follows: At the times alleged the defendant was engaged, under contract with the Commonwealth, in the construction of the Cheapside Bridge spanning the Deerfield River on the main road between Greenfield and Deerfield. The bridge was a public work. The defendant was a general contractor and had its office at the job on the Deerfield side of the bridge. Substantially all building contractors in the thickly populated section of the town of Greenfield immediately across the river from the Cheapside job office of the defendant were paying journeymen carpenters at the rate of $1 per hour for a day's wages. These journeymen carpenters were employed in the erection of a county building and private buildings other than bridges, there being no other bridge construction within the confines of Greenfield or Deerfield. The journeymen carpenters employed on the bridge were engaged principally in an inferior grade of carpentry known as form building. On the dates alleged in the indictment there was

no sufficient amount of building going on in the town of Deerfield so that it could be determined what rate of wages was being paid to men doing the type of work that was being done at the bridge. The three men named in the first three counts, residents of Holyoke, were on the dates alleged duly qualified and listed as union journeymen. There was evidence tending to show that on the dates alleged these three men by reason of an arrangement, to which they consented and under which they continued to work, received wages at the rate of seventy-five cents per hour.

The only question presented for decision is the constitutionality of the statute. Its pertinent words are these: "The wages for a day's work paid to mechanics and teamsters employed in the construction, addition to or alteration of public works" "by the commonwealth, or by a county, town or district, or by persons contracting therewith for such construction, addition to and alteration of public works" "shall be not less than the customary and prevailing rate of wages for a day's work in the same trade or occupation in the locality where such public works are under construction or being added to or altered . . . . Any person or contractor who knowingly and wilfully violates this section shall be punished by a fine of not more than one hundred dollars." G. L. (Ter. Ed.) c. 149, § 26.

The defendant relies mainly on *Connally* v. *General Construction Co.* 269 U. S. 385, as a controlling authority in its favor. In that case the statute under consideration provided "that not less than the current rate of per diem wages in the locality where the work is performed shall be paid" to specified employees of the State or of contractors or subcontractors in the execution of contracts with the State. Referring to these statutory words it was said at pages 393, 394 and 395: "We are of opinion that this provision presents a double uncertainty, fatal to its validity as a criminal statute. In the first place, the words 'current rate of wages' do not denote a specific or definite sum, but minimum, maximum and intermediate amounts, indeterminately, varying from time to time and dependent upon the class and kind of work done, the efficiency of the

workmen . . . . The 'current rate of wages' is not simple but progressive — from so much (the minimum) to so much (the maximum), including all between; and to direct the payment of an amount which shall not be less than one of several different amounts, without saying which, is to leave the question of what is meant incapable of any definite answer . . . . Nor can the question be solved by resort to the established canons of construction that enable a court to look through awkward or clumsy expression, or language wanting in precision, to the intent of the legislature. For the vice of the statute here lies in the impossibility of ascertaining, by any reasonable test, that the legislature meant one thing rather than another, and in the futility of an attempt to apply a requirement, which assumes the existence of a rate of wages single in amount, to a rate in fact composed of a multitude of gradations. To construe the phrase 'current rate of wages' as meaning either the lowest rate or the highest rate or any intermediate rate or, if it were possible to determine the various factors to be considered, an average of all rates, would be as likely to defeat the purpose of the legislature as to promote it . . . . In the second place, additional obscurity is imparted to the statute by the use of the qualifying word 'locality.' Who can say, with any degree of accuracy, what areas constitute the locality where a given piece of work is being done? Two men moving in any direction from the place of operations, would not be at all likely to agree upon the point where they had passed the boundary which separated the locality of that work from the next locality . . . . In other connections or under other conditions the term 'locality' might be definite enough, but not so in a statute such as that under review imposing criminal penalties. Certainly, the expression 'near the place' leaves much to be desired in the way of a delimitation of boundaries; for it at once provokes the inquiry, 'how near?' And this element of uncertainty cannot here be put aside as of no consequence, for, as the rate of wages may vary . . . among different employers and according to the relative efficiency of the workmen, so it may vary

in different sections. The result is that the application of the law depends not upon a word of fixed meaning in itself, or one made definite by statutory or judicial definition, or by the context or other legitimate aid to its construction, but upon the probably varying impressions of juries as to whether given areas are or are not to be included within particular localities. The constitutional guaranty of due process cannot be allowed to rest upon a support so equivocal."

We are unable to perceive a difference, in any constitutional sense, between the words "current rate of per diem wages" there held because of indefiniteness to violate the provisions of the Fourteenth Amendment to the Constitution of the United States as to due process of law and the words "the customary and prevailing rate of wages for a day's work" of the statute here assailed. In the case at bar there was no evidence for determining the rate of wages in the town in which one end of the bridge was located. The rate of wages in the "thickly populated" section of the town in which the other end of the bridge rested appears to have related not to the "inferior grade of carpentry" required for "form building" on the bridge by the defendant, but to that required for a county building and private buildings. These factors are as uncertain as those in the *Connally* case. The word "locality" as the description of place for ascertaining of standard wages is the same in each statute. See *Thomas* v. *Marshfield*, 10 Pick. 364; *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279, 287; *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309, 314–315.

The case of *Connally* v. *General Construction Co.* 269 U. S. 385, has been several times cited with approval by the Supreme Court of the United States. See, for example, *Cline* v. *Frink Dairy Co.* 274 U. S. 445, 458; *Smith* v. *Cahoon*, 283 U. S. 553, 564; *Champlin Refining Co.* v. *Corporation Commission of Oklahoma*, 286 U. S. 210, 243. To the same effect are *Christy-Dolph* v. *Gragg*, 59 Fed. Rep. (2d) 766, *Mayhew* v. *Nelson*, 346 Ill. 381. Compare *Ruark* v. *International Union of Operating Engineers*, 157 Md. 576,

583, 584, *Campbell* v. *New York*, 244 N. Y. 317, 326, where civil rights as distinguished from criminal prosecutions were involved.

Since the decision of *Connally* v. *General Construction Co.* 269 U. S. 385, relates to a Federal question concerning the force of the Fourteenth Amendment, it is binding on State courts and must be followed. *Chesapeake & Ohio Railway* v. *Martin*, 283 U. S. 209, 221. *Chesapeake & Ohio Railway* v. *Kuhn*, 284 U. S. 44, 47. The necessary result is that the statute in its aspect here assailed is violative of rights guaranteed to the defendant by the Fourteenth Amendment. Therefore it must be declared unconstitutional and the defendant cannot be held liable on the present indictment.

In our opinion there is nothing inconsistent with this conclusion in *Kneeland* v. *Emerton*, 280 Mass. 371, or in *Commonwealth* v. *National City Co.* 280 Mass. 439.

The answer to the question reported is that the part of G. L. (Ter. Ed.) c. 149, § 26, set forth in the report violates the Fourteenth Amendment to the United States Constitution. The case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*