## COMMONWEALTH *vs.* ROBERT M. DOWE.

Essex.    October 4, 1943. — December 27, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Bribery. Public Officer. Municipal Corporations*, Officers and agents. *Practice, Criminal*, Exceptions: filing of bill; Variance. *Lawrence. Pleading, Criminal*, Indictment. *Words*, "Municipal officer," "Executive officer."

Failure by an indicted defendant, after saving an exception to the denial of a motion to quash the indictment, to file a bill of exceptions within the three days allowed by G. L. (Ter. Ed.) c. 278, § 31, or to procure an extension of that time, deprived him of the right to present that exception to this court.

One indicted under G. L. (Ter. Ed.) c. 268, § 8, for corruptly accepting "money and credit" properly was convicted upon proof that a credit, but no money, was accepted.

Evidence, at the trial of an indictment under G. L. (Ter. Ed.) c. 268, § 8, charging the commissioner of soldiers' relief of a city with corruptly accepting credit, warranted a finding of an understanding between the defendant and a shoe dealer that the dealer should continue to receive the soldiers' relief shoe business in return for a credit given the defendant on the dealer's books for shoes taken by the defendant for his personal use and not paid for, although there was no evidence that an understanding was explicitly expressed in words.

The commissioner of soldiers' relief of Lawrence was a "municipal officer" within G. L. (Ter. Ed.) c. 268, § 8.

An indictment under G. L. (Ter. Ed.) c. 268, § 8, against the soldiers' relief commissioner of Lawrence as an "executive officer of the city" meant to charge him merely as a "municipal officer" within the statute, and he properly was convicted on evidence supporting such allegation.

INDICTMENT, found and returned on December 16, 1941.

The case was tried before *Fosdick*, J. After his death, a bill of exceptions was allowed by *Spalding*, J.

*H. F. Collins*, (*M. E. Walch* with him,) for the defendant.

*F. G. Volpe*, Assistant Attorney General, for the Commonwealth.

LUMMUS, J. The indictment charges that the defendant, "on or about" November 30, 1937, at Lawrence, "being an executive officer of the city of Lawrence, to wit: the commissioner of soldiers relief, did corruptly request and accept a gift and gratuity and a promise to make a gift and to do an act beneficial to him, the said Robert M. Dowe, to wit: a sum of money and credit to the amount and value of eighty dollars ($80.00), under an agreement and with an understanding that his, the said Robert M. Dowe [*sic*], vote, opinion and judgment should be given in a particular manner and upon a particular side of a question, cause and proceeding which was then pending and which might by law come and be brought before him, the said Robert M. Dowe, in his official capacity as commissioner of soldiers relief of the city of Lawrence."

The statute (G. L. [Ter. Ed.] c. 268, § 8) makes "a legislative, executive, judicial, county or municipal officer" punishable who "corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity."

The defendant, on April 30, 1942, excepted to the denial of his motion to quash the indictment. No bill of exceptions was filed until May 8, 1942, after he had been tried and found

guilty by a jury. It is true in both civil and criminal cases that exceptions cannot ordinarily be entered in this court until the case has reached a stage when it will become ripe for judgment as soon as the exceptions shall have been disposed of. *Commonwealth* v. *Gloucester*, 110 Mass. 491, 497. *Weil* v. *Boston Elevated Railway*, 216 Mass. 545, 547. *Todd* v. *Pearce*, 291 Mass. 455, 459, 460. *Donovan* v. *Donovan*, 294 Mass. 94, 96. *Driscoll* v. *Battista*, 311 Mass. 372. And now in criminal cases exceptions cannot be entered in this court until after judgment, which in criminal cases is the sentence. G. L. (Ter. Ed.) c. 279, § 4, as amended by St. 1935, c. 50, § 3, and c. 437, § 3. *Commonwealth* v. *Fleckner*, 167 Mass. 13. *Commonwealth* v. *Brown*, 167 Mass. 144, 146. *Commonwealth* v. *Millen*, 290 Mass. 406, 411. But a defendant in a criminal case who has excepted to some interlocutory ruling nevertheless must file a bill of exceptions within three days after the "opinion, ruling, direction or judgment excepted to is given, unless a further time, not exceeding five days, except by consent of the district attorney, is allowed by the court." G. L. (Ter. Ed.) c. 278, § 31. *Allen, petitioner*, 255 Mass. 227. *Commonwealth* v. *Kossowan*, 265 Mass. 436. *Glick, petitioner*, 299 Mass. 255. For a comparable practice in civil cases, see *Anti* v. *Boston Elevated Railway*, 247 Mass. 1, 3, 4; *Cohen* v. *Industrial Bank & Trust Co.* 274 Mass. 498. In the present case no further time was allowed. The exception to the denial of the motion to quash perished by lapse of time before any bill of exceptions was filed.

The only exception before us is the one taken to the denial of a directed verdict of not guilty. The grounds specified in that motion (*Beebe* v. *Randall*, 304 Mass. 207, 209, 211) will be considered in their order.

1. The indictment charged the defendant with accepting as a gift and gratuity a sum of money "and" credit. The defendant contends that there is a variance, for the proof showed that a credit, but no money, was accepted. This contention ignores an elementary rule of criminal pleading. It was not necessary to prove the acceptance of both money and credit. Where a crime can be committed in any one of several ways, an indictment properly charges its commission

in all those ways, using the conjunction "and" in joining them. Then the defendant should be convicted if it is proved that he committed the crime in any of those ways. *Commonwealth* v. *O'Brien*, 107 Mass. 208. *Commonwealth* v. *Adams*, 127 Mass. 15, 19. It is true that in some reported cases the indictment improperly charged the different ways in the disjunctive, and that no objection was taken. But such an indictment violates the rule requiring certainty in criminal pleading. *Commonwealth* v. *Curtis*, 9 Allen, 266. *Commonwealth* v. *Hogan*, 249 Mass. 555, 559, 561, 564. *Commonwealth* v. *McKnight*, 283 Mass. 35, 38. *Commonwealth* v. *Stone*, 300 Mass. 160, 165. *Commonwealth* v. *Martin*, 304 Mass. 320, 322, 323.

It is not argued that a credit against indebtedness could not be found to be a "gift or gratuity" having sufficient value to constitute a bribe. *Commonwealth* v. *Hayes*, 311 Mass. 21, 27, and note at page 23. *Commonwealth* v. *Hurley*, 311 Mass. 78, 82. *Commonwealth* v. *Albert*, 310 Mass. 811, 818.

2. There was evidence that the credit was given and accepted on or about November 30, 1937, upon a corrupt agreement or understanding as alleged. The defendant had been commissioner of soldiers' relief of Lawrence since April 16, 1928. In his official capacity he furnished shoes to needy persons at the expense of the city. The question from what dealer they were to be bought was constantly pending before him as commissioner. *Commonwealth* v. *Lapham*, 156 Mass. 480, 484. As early as 1932, the evidence showed, he had made a corrupt agreement with a shoe dealer named Sandler, whereby Sandler was to get practically all the soldiers' relief shoe business in return for sharing profits with the defendant monthly. Sandler charged the city excessive prices until May, 1937, when apparently he became frightened. But even after that date it could have been found that Sandler valued the soldiers' relief shoe business, which the defendant controlled, and desired to retain it.

The defendant took many shoes from Sandler's store for his personal use, and never paid for them. When Sandler asked for pay, the defendant refused, saying, "You are making plenty" and "you have got to put something through."

Sandler then told the defendant that he would put through a credit to the defendant of $80. The defendant answered: "Put down $80" and "Put it through." Sandler then gave the defendant a credit of $80 on his books, although the defendant paid nothing.

The relations between the defendant and Sandler had long been corrupt. The jury could infer an understanding that Sandler was to continue to receive the soldiers' relief shoe business from the defendant. That understanding need not have been expressed in words.

3. The defendant could have been found to be "an executive officer of the city of Lawrence," as charged in the indictment.

The first mention we find of a commissioner of soldiers' relief is in St. 1897, c. 441,[1] which created the soldiers' relief department of the city of Boston under the charge of a soldiers' relief commissioner appointed by the mayor subject to confirmation by the aldermen. He was to take over duties previously performed by the mayor and aldermen, and was to be subject to the direction of the aldermen as to the amounts to be paid to beneficiaries. See also St. 1899, c. 374, § 10. The first mention of such a commissioner in a general statute appears to have been in R. L. (1902) c. 79, §§ 18, 20. Apparently there was then no such commissioner except in Boston. By later statutes the commissioner of soldiers' relief "of" or "in" various cities has been brought within the civil service laws. St. 1932, c. 92. St. 1933, c. 249. St. 1934, c. 144. St. 1935, c. 168, c. 170. St. 1936, c. 355. St. 1937, c. 319. In Lawrence the office was created by ordinance in 1928. St. 1911, c. 621, Part II, § 47. *Attorney General* v. *Tillinghast*, 203 Mass. 539. *Williams* v. *New Bedford*, 303 Mass. 213. *Nichols* v. *Commissioner of Public Welfare*, 311 Mass. 125, 131. The commissioner was to be elected by the city council, and was to be under the super-

---

[1] We take judicial notice of that statute on the theory that in effect it was an amendment of the charter or act of incorporation of the city of Boston. G. L. (Ter. Ed.) c. 233, § 74. *Brodsky* v. *Fine*, 263 Mass. 51, 54. *Bleck* v. *East Boston Co.* 302 Mass. 127. *Framingham Homes, Inc.* v. *Dietz*, 312 Mass. 471, 473. Compare *Prince* v. *Crocker*, 166 Mass. 347, 358; *Hooker* v. *McLennan*, 236 Mass. 117, 120.

vision of the mayor and city council. He was given an annual salary, and no term of office was fixed.

The present statute is G. L. (Ter. Ed.) c. 115. A recipient of State aid must live in the town (including city, G. L. [Ter. Ed.] c. 4, § 7, Thirty-fourth) furnishing aid. § 6. The statute, by using the phrase "if there is no such commissioner," implies that it is optional with a municipality to have one or not. § 15, as amended by St. 1932, c. 106. But the possible existence of such an officer is contemplated. §§ 3, 12, 15, 17, 19. The commissioner of State aid and pensions, a State officer, is given certain powers to override a local commissioner of soldiers' relief and other local authorities. §§ 5, 15.

The defendant, in our opinion, was a public officer and not a mere employee. *Attorney General* v. *Tillinghast*, 203 Mass. 539. *Opinion of the Justices*, 303 Mass. 631, 637, 638. *O'Connell* v. *Retirement Board of Boston*, 254 Mass. 404. *Robertson* v. *Commissioner of Civil Service*, 259 Mass. 447, 449. The fact that he was subordinate in some respects to a higher State officer, and to the mayor and city council, does not make him other than a public officer. "A subordinate or inferior officer is none the less an officer." *Attorney General* v. *Tillinghast*, 203 Mass. 539, 544. *Adams* v. *Selectmen of Northbridge*, 253 Mass. 408. *New England Trust Co.* v. *Boston*, 300 Mass. 321, 328. See also *Caswell* v. *Somerville Retirement System*, 306 Mass. 373, 375; *Commonwealth* v. *Hunt*, 216 Mass. 126, 129; *Commonwealth* v. *Tsaffaras*, 250 Mass. 445, 448.

Was he a "municipal officer" as distinguished from a State officer? In a certain sense, all public officers are officers of the Commonwealth, for from it directly or indirectly they derive their powers. *Opinion of the Justices*, 167 Mass. 599, 600. *Attorney General* v. *Tillinghast*, 203 Mass. 539, 546. *Attorney General* v. *Tufts*, 239 Mass. 458, 479. *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 580. *Nichols* v. *Commissioner of Public Welfare*, 311 Mass. 125, 130, 131. And it is true of many officers who are elected or appointed and are paid locally, and who spend the money of the municipality to which their duties are restricted, that they are not re-

movable by that municipality or any of its officers (*Attorney General* v. *Stratton*, 194 Mass. 51; *Adie* v. *Mayor of Holyoke*, 303 Mass. 295), are not subject to direction or control by that municipality or any of its officers (*Cox* v. *Segee*, 206 Mass. 380, 382, assessors; *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 484, assessors; *Breault* v. *Auburn*, 303 Mass. 424, board of health; *Gibney* v. *Mayor of Fall River*, 306 Mass. 561, 565, board of health), have no contractual relation with that municipality for payment of the statutory compensation which it must pay them (*Walker* v. *Cook*, 129 Mass. 577; *Hooker* v. *McLennan*, 236 Mass. 117, assessors; *Cook* v. *Springfield*, 184 Mass. 247, license commissioner; *Campbell* v. *Boston*, 290 Mass. 427, 429, clerk of court; *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 487), and are not agents or servants of the municipality for the purpose of fixing responsibility on the municipality for their acts. *Hafford* v. *New Bedford*, 16 Gray, 297 (fireman). *Walcott* v. *Swampscott*, 1 Allen, 101 (surveyor of highways). *Buttrick* v. *Lowell*, 1 Allen, 172 (police officer). *Rossire* v. *Boston*, 4 Allen, 57 (assessors). *Hathaway* v. *Everett*, 205 Mass. 246 (assessors and police officers). *Bolster* v. *Lawrence*, 225 Mass. 387. *Wood* v. *Concord*, 268 Mass. 185. *Daddario* v. *Pittsfield*, 301 Mass. 552, 557, 558. *Everett* v. *Canton*, 303 Mass. 166 (board of public welfare). *Ryder* v. *Taunton*, 306 Mass. 154 (superintendent of streets). *Chaffee* v. *Oxford*, 308 Mass. 520 (board of public welfare). *Sweeney* v. *Boston*, 309 Mass. 106. *Warburton* v. *Quincy*, 309 Mass. 111. *Reitano* v. *Haverhill*, 309 Mass. 118 (school committee).

It does not follow that such officers are State officers, and not "municipal" officers, within the meaning of the statute as to bribery. For example, it has been said of assessors that they "are not State officers in the ordinary sense of the term." *Hobart* v. *Commissioner of Corporations & Taxation*, 311 Mass. 341, 344. The inference is plain that in the same sense they are municipal officers. *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 485. County commissioners are not "officers of the Commonwealth" within the provision of the Constitution for impeachment. *Opinion of the Justices*, 167 Mass. 599. "They are county officers." *Opinion*

*of the Justices,* 303 Mass. 615, 620. District attorneys, who have no superior but the Attorney General (*Commonwealth* v. *Kozlowsky,* 238 Mass. 379), and are subject to no local control, have likewise been held not "officers of the Commonwealth" within the same constitutional provision. *Attorney General* v. *Tufts,* 239 Mass. 458, 478–481. *Attorney General* v. *Pelletier,* 240 Mass. 264, 294. A clerk of a court, though subject to control by the court (*Patrick* v. *Dunbar,* 294 Mass. 101, 104; *Boston* v. *Santosuosso,* 308 Mass. 202, 206), is not subject to control by, and has no contractual relation with, any county or municipality. *Campbell* v. *Boston,* 290 Mass. 427, 429. Yet he has been held a "county . . . officer" within the bribery statute. *Commonwealth* v. *Connolly,* 308 Mass. 481, 490, 491. In *Eastern Massachusetts Street Railway* v. *Mayor of Fall River,* 308 Mass. 232, it was held that a school committee may be a municipal board.

The defendant relies upon the statement made *arguendo* in *McDonald* v. *Superior Court,* 299 Mass. 321, 324, that the office of license commissioner in a city is "not a municipal but a State office." See also *Brown* v. *Nahant,* 213 Mass. 271; *Crocker* v. *Deschenes,* 287 Mass. 202; *Furlong* v. *Ayers,* 305 Mass. 455, 458. That statement does not appear to have been strictly necessary to the decision. Whether it is true in all respects or not, the office of license commissioner differs widely from the office held by the defendant. What is true of one need not be true of the other. The office held by the defendant differs also from an office like that of police commissioner of Boston, where the appointment is by the Governor although the duties are local. *Sims* v. *Police Commissioner of Boston,* 193 Mass. 547, 549. *Sullivan* v. *Lawson,* 267 Mass. 438, 441. *Broadhurst* v. *Fall River,* 278 Mass. 167, 171. *Openshaw* v. *Fall River,* 287 Mass. 426, 428.

The defendant held an office created by municipal ordinance. He was chosen by officers of the city. His duties were restricted to the city. He was paid by the city. In our opinion he was not in any ordinary sense an officer of the Commonwealth as distinguished from a municipality. *Commonwealth* v. *Connolly,* 308 Mass. 481, 490, 491.

At common law, with respect to every kind of public officer, the giving or receiving of a bribe for official favor was a misdemeanor. *State* v. *Ellis,* 4 Vroom, 102. *People* v. *Swift,* 59 Mich. 529. *Walsh* v. *People,* 65 Ill. 58. *State* v. *Miles,* 89 Maine, 142. 2 Bishop, Crim. Law (9th ed.) §§ 85–87. 1 Russell, Crimes (7th ed. 1910) 627, et seq. Our statute originally applied only to an "executive, legislative or judicial officer." Rev. Sts. (1836) c. 128, § 9. In *Commonwealth* v. *Lapham,* 156 Mass. 480, where the defendant was a municipal officer, both parties contended that the common law crime of bribery still existed, and that the indictment charged the common law offence. The court did not decide the question. In *People* v. *Swift,* 59 Mich. 529, it was held that words similar to those just quoted from our earlier statute included a municipal officer, in that case an alderman. But the intimation in the *Lapham* case, *supra,* is to the contrary, and is borne out by the fact that by St. 1891, c. 349, § 2, the words "county" and "municipal" were added. In its present form the statute includes nearly all public officers, but perhaps not quite all. See *Commonwealth* v. *Farrell,* 5 Allen, 130; *Doyle* v. *Kirby,* 184 Mass. 409; *Commonwealth* v. *Hunt,* 216 Mass. 126, 128; *Salisbury* v. *Salisbury Water Supply Co.* 279 Mass. 204, 206. Instead of using a comprehensive expression like "public officer," the statute lists various kinds of officers. Thus questions of classification have arisen, in *Commonwealth* v. *Tsaffaras,* 250 Mass. 445, 447, in *Commonwealth* v. *Connolly,* 308 Mass. 481, 490, 491, and in the present case.

We think that the words "executive . . . officer" in the statute refer to an officer of the executive branch of the State government, and not to a municipal officer having executive duties. The words "executive officer of the city of Lawrence," used in the indictment, mean a "municipal officer" of Lawrence whose duties are declared, though unnecessarily, to be executive in nature. Without doubt that unnecessary allegation was true. *Attorney General* v. *Trehy,* 178 Mass. 186, 192, 193. In substance the indictment alleges that the defendant was a municipal officer of Lawrence. The evidence supported that allegation. The fact that the judge

permitted the jury to classify the defendant as a municipal officer or some other kind of officer, instead of ruling on the question as matter of law, did not prejudice the defendant. *Commonwealth* v. *Tsaffaras*, 250 Mass. 445, 448.

*Exceptions overruled.*