COMMONWEALTH *vs.* CARROLL A. OLIVER
(and fifteen companion cases[1]).

Bristol.    January 3, 1961. — February 13, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Public Officer. Municipal Corporations,* Officers and agents. *Taunton. Public Works. Words,* "Direction and control."

The members of the municipal light commission of Taunton appointed under Spec. St. 1919, c. 150, and the manager of the municipal lighting plant, although they are public officers, are city officers within G. L. c. 266, § 51. [83–84]

Under G. L. c. 164, §§ 55, 56, the members of the municipal light commission of Taunton appointed under Spec. St. 1919, c. 150, and the manager of the municipal lighting plant, are city officers "authorized to procure materials, supplies or other articles" within G. L. c. 268, § 9. [84–86]

No crime is committed by a municipal officer by awarding a contract subject to the bidding procedure prescribed in G. L. c. 149, §§ 44A–44L, without complying with that procedure; § 180 is inapplicable thereto. [86–89]

SIXTEEN INDICTMENTS found and returned on June 18, 1959.

Motions to quash the indictments were filed in the Superior Court, and thereafter certain questions of law were reported by *Forte,* J.

---

[1] Three of the companion cases are against Carroll A. Oliver, four against Michael J. Welch, three against Milton E. Kelley, and five against John J. O'Donnell.

*Michael J. Monahan,* (*Joseph M. McDonough* with him,) for the defendants.

*Joseph T. Doyle,* Assistant Attorney General, (*James W. Bailey,* Special Attorney General with him,) for the Commonwealth.

WHITTEMORE, J.   This is a report by a judge of the Superior Court of the questions of law arising on motions of three members of the Municipal Light Commission of Taunton, and the manager of the Municipal Lighting Plant, to quash indictments which charge violations of G. L. c. 266, § 51, c. 268, § 9, and c. 149, §§ 44A–44L.

1.   Each of the defendants is an officer of the city of Taunton under G. L. c. 266, § 51, which provides that "A county, city or town officer who embezzles or fraudulently converts, or who fraudulently takes or secretes with intent so to do, effects or property which belong to or are in possession of said county, city or town, shall be punished . . . ."

The affairs of the political subdivisions of the Commonwealth are by statute entrusted for the most part to public officers who are not agents or servants of the municipality, county or other political entity for which they act but are nevertheless appropriately designated as officers of such entities. *Commonwealth* v. *Dowe,* 315 Mass. 217, 222–224. *Municipal Light Commn. of Taunton* v. *Taunton,* 323 Mass. 79, 84, holding that the Taunton municipal light commissioners, appointed by the mayor under Spec. St. 1919, c. 150, are not agents of the city subject to its direction and control but rather "public officers under legislative mandate," in no way suggests that the commissioners are not officers of the city.   On the contrary, read with the *Dowe* case, *supra,* it puts them in that category, along with the mayor, assessors, other officers, and the members of various municipal boards whose status is reviewed in the *Dowe* case.   See G. L. c. 164, § 63, discussed below.   The commissioners are no less city officers because, as the *Taunton* case notes (p. 84), they are "subject to the supervision of other public officers and particularly of the department of public

utilities." They are "not in any ordinary sense . . . [officers] of the Commonwealth." *Commonwealth* v. *Dowe, supra,* p. 224.

The defendant Oliver, as manager of the plant, although he acts under the direction and control of commissioners (Spec. St. 1919, c. 150, §§ 1, 2; G. L. c. 164, § 56; *Capron* v. *Taunton,* 196 Mass. 41, 43; *Municipal Light Commn. of Taunton* v. *Taunton,* 323 Mass. 79, 83–84) is nevertheless a public officer of the city. *Attorney Gen.* v. *Tillinghast,* 203 Mass. 539, 543–544. *Commonwealth* v. *Dowe,* 315 Mass. 217, 222. The *Dowe* case holds that the commissioner of soldiers' relief of Lawrence, although subordinate in some respects to a higher State officer and to the mayor and city council, was a public officer indictable for bribery under ·G. L. c. 268, § 8, as a municipal officer. The manager has important duties prescribed by statute and when the office was first authorized he was expressly called an "officer . . . known as manager." St. 1891, c. 370, § 8. Express designation is also found in G. L. c. 164, § 63, which requires an annual return by the manager and by municipal light board members and provides that "Any officer of a town" thus required to make an annual return who neglects so to do shall be subject to a penalty.

2. The defendant Oliver as manager of the plant is, within the meaning of G. L. c. 268, § 9, "[a]n officer . . . of . . . a . . . city . . . [who is] authorized to procure materials, supplies or other articles either by purchase or contract," and he is therefore subject to indictment thereunder if he "receives . . . [a] present . . . from the person who makes such contract, [or] furnishes such materials, supplies or other articles." Point 1, *supra.* G. L. c. 164, § 56. Spec. St. 1919, c. 150. *Capron* v. *Taunton,* 196 Mass. 41. The manager, "under the direction and control of the . . . [commissioners] and subject to . . . [c. 164, has] full charge of the operation and management of the plant, the manufacture and distribution of gas or electricity, the purchase of supplies, the employment of attorneys ‚and of agents and servants, the method, time, price, quantity and

quality of the supply, the collection of bills, and the keeping of accounts.''

The indictments of the commissioners for violation of G. L. c. 268, § 9, in the taking of presents from suppliers are also valid.

Special St. 1919, c. 150, § 1, gives the commissioners the powers and duties formerly in the mayor and ''in addition all the powers and duties now conferred or imposed by law upon municipal light boards in towns.'' Such boards have always had authority inter alia to ''maintain and operate'' the plant and the manager has been subordinate to them. St. 1893, c. 454, § 10. R. L. c. 34, § 19. G. L. c. 164, § 55. See *Capron* v. *Taunton,* 196 Mass. 41, 43. The manager by § 56 acts ''under the direction and control of the mayor, selectmen or municipal light board, if any, and subject to this chapter . . ..'' Thus it appears that the management and operation of the plant is in the board (or commissioners under Spec. St. 1919, c. 150) by virtue of G. L. c. 164, § 55, and in the manager acting under them as their executive officer by virtue of § 56. See *Whiting* v. *Mayor of Holyoke,* 272 Mass. 116, 119–120; *Municipal Light Commn. of Taunton* v. *Taunton,* 323 Mass. 79. The breadth of the specification of the duties of the manager, that he is to have ''*full* charge of the operation and management of the plant . . . the purchase of supplies . . . [etc.]'' (emphasis supplied), is modified by § 55.

The authority under G. L. c. 164, § 55, to ''operate'' a plant includes authority to buy needed supplies and equipment. The superior authority of the commissioners includes at least the authority to approve or disapprove contracts and purchase orders for supplies and equipment negotiated in the first instance by the manager. It also includes by reasonable implication power to initiate purchases if for any reason a manager should not be acting. The commissioners' authority therefore is authority, the exercise of which can be corrupted by a bribe; it is authority within the meaning of G. L. c. 268, § 9, construed according to the rule for strict, but common sense and effec-

tive construction applicable to criminal statutes. See *Libby* v. *New York, N. H. & H. R.R.* 273 Mass. 522, 526; *Commonwealth* v. *Corbett,* 307 Mass. 7, 8; *Commonwealth* v. *Slome,* 321 Mass. 713, 716.

*Capron* v. *Taunton,* 196 Mass. 41, is distinguished by the difference in the statutes. The case holds that the mayor under R. L. c. 34, § 20 (now G. L. c. 164, § 56), had no authority to require the reëmployment of an employee discharged by the manager; that the manager, being under the direction and control of the appointing authority (in that case the mayor), was, in the exercise of his powers, subject to such reasonably required general regulations as the appointing authority might make; but that "original authority to contract in behalf of the city for the hiring of all employees, or to discharge them, was delegated only to the manager." The mayor did not have the express authority given by R. L. c. 34, § 19 (now G. L. c. 164, § 55), to the municipal light board, and, by the presently applicable statutes, to the defendant commissioners, to "maintain and operate" the plant. We intend no intimation as to whether G. L. c. 268, § 9, may be applicable to mayors or selectmen acting under G. L. c. 164, § 56, in "direction and control" of managers with or without formal supervisory regulations or instructions. As to the meaning of such words as "direction and control" in particular contexts see also *Rockhill Iron & Coal Co.* v. *Taunton,* 273 Fed. 96, 101; *Berkshire Woollen Co.* v. *Day,* 12 Cush. 128, 130; *Hobart* v. *Commissioner of Corps. & Taxn.* 311 Mass. 341, 344–345; *Warner Valley Stock Co.* v. *Smith,* 165 U. S. 28, 33–34; *Greene* v. *Wheeler,* 29 F. 2d 468, 469; *Amsel* v. *Brooks,* 141 Conn. 288, 296–297; *In re Durant,* 60 Vt. 176, 180–182.

3. The indictments are invalid which charge the awarding of a contract "for the alteration, remodeling and repair of a public building in the amount of $18,324 . . . without competitive bids in accordance with the procedure set forth in . . . c. 149, §§ 44A to 44L, inclusive."

General Laws c. 149, § 180, provides: "Whoever violates a provision of this chapter for which no specific penalty is

provided shall be punished by a fine of not more than one hundred dollars.''

No specific penalty is provided for violations of §§ 44A to 44L. The forerunners of §§ 44A–44L were inserted by St. 1939, c. 480, ''An Act requiring fair competition for bidders . . . .'' There was included in c. 480 no specific enforcing or penalty section. A specific enforcing section was inserted by St. 1954, c. 645, § 4, in a new § 44E which gave substantially the enforcing power now found in § 44K.

It is doubtful whether the General Court intended that the fair bidding statute be subject to § 180. An intent that the statute be enforced by the Department of Labor and Industries is sufficient to account for its insertion in c. 149. This chapter includes many sections which impose specific penalties, some sections to which a penalty appears inapplicable,[1] and several sections to which application of § 180 appears apt.[2] For reasons to be stated, we need not determine whether there was legislative intent that § 180 apply.

It would be unreasonable to construe as criminal noncompliance with many of the specifications of detailed procedure contained in §§ 44A to 44L. Some of the specifications of §§ 44B to 44L are of acts to be done by bidders to qualify their bids for acceptance. Although the language is mandatory (for example, § 44B requires that ''Every general bid . . . and every sub-bid . . . shall be accompanied by cash or a certified check . . . ''), the significance of noncompliance is to make the bid invalid, not that the bidder has committed a crime. The requirements for the return of bid deposits to eliminated subbidders (§ 44B [3]) may give enforceable rights to the bidders, but the mandate is collateral and incidental to the purpose of the statute. Some of the specifications may be directory, a possibility adverted to in *Loranger* v. *Martha's Vineyard Regional*

---

[1] See, for example, sections stating the duties to inspect, report, hold hearings, issue permits, supervise attendance, make orders, prepare schedules—§§ 3, 4, 8, 9, 14, 18, 76, 92, 93, 114, 136, 145, 146, 161, 170, 171. Section 29 resembles § 44A in the aspect under discussion: ''Officers . . . shall obtain security by bond . . . for payment . . . for labor . . . and materials . . . .''

[2] See for example, §§ 13, 19, 25, 55, 69 and 92.

*High Sch. Dist. Sch. Comm.* 338 Mass. 450, 458. Substantial compliance may meet the statutory mandate. *Ibid.* *John D. Ahern Co. Inc.* v. *Acton-Boxborough Regional Sch. Dist.* 340 Mass. 355. *Fred C. McClean Heating Supplies, Inc.* v. *School Bldg. Commn. of Springfield,* 341 Mass. 322.

The requirements of the statute are not in all respects sufficiently clear to inform the person referred to just what is required of him. See *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347, 355; the *Loranger* case, *supra,* p. 458, text and footnote. Constitutional principles bar a penal construction of such provisions. If the mandate of a criminal statute is not sufficiently certain to disclose its meaning and application to men of common intelligence it violates due process of law. *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521. *Connally* v. *General Constr. Co.* 269 U. S. 385, 391. *Commonwealth* v. *Pentz,* 247 Mass. 500, 506. *Commonwealth* v. *Daniel O'Connell's Sons, Inc.* 281 Mass. 402. *Commonwealth* v. *Corbett,* 307 Mass. 7, 8. *Commonwealth* v. *Slome,* 321 Mass. 713, 715. *Jaquith* v. *Commonwealth,* 331 Mass. 439, 441–442.

It may nevertheless be thought that § 180 should be construed to impose a penalty for the violation of the basic mandate of § 44A, such as a failure even to call for bids in a case where bids are unquestionably called for. But even if the statute were deemed to show an intent to impose a penalty in such case, the construction must be rejected. The mandate of § 44A is to award the contract "to the lowest responsible and eligible general bidder . . . in accordance with the procedure . . . of sections forty-four B to forty-four L." This mandate is violated in all cases of noncompliance whether it is noncompliance because no bids were called for, or because the substantive procedural requirements were not met. *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, 616–617. *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347. *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 256–259. To construe the statute as applying only to a failure to attempt to comply would be to exceed our function and re-

write the statute. Therefore, whatever the intent in respect of § 180, the application of that section to §§ 44A–44L is barred.

4. The motions to quash the indictments under G. L. c. 149, §§ 44A to 44L, are to be allowed. The other motions to quash are to be denied.

*So ordered.*